STATE ex rel MIX, *Respondent,*

*v.*

NEWLAND, *Appellant.*

(No. 17870, SC P-2489)

560 P2d 255

R. L. Marceau, of Panner, Johnson, Marceau, Karnopp & Kennedy, Bend, argued the cause and filed a brief for appellant.

William M. Holmes, of Gray, Fancher, Holmes & Hurley, Bend, argued the cause and filed a brief for respondent.

Before Denecke, Chief Justice, and O'Connell,* Holman, Tongue, Howell, and Bryson, Justices.

HOWELL, J.

*Term expired January 3, 1977.

**HOWELL, J.**

This is the second time that a dispute over a chrysanthemum sport, "Copper Anne," has come before this court. The first was a declaratory judgment proceeding wherein the plaintiff, Marvin Mix, and the defendant, Ron Newland, Mix's employee, both claimed to be the owner and discoverer of the new plant. Newland also contended that exclusive jurisdiction of the dispute was vested in the United States Patent Office because he had applied for a patent, and plaintiff Mix had instituted an interference proceeding before the Interference Board of the U.S. Patent Office.[1] The trial court found that plaintiff Mix was both the owner and discoverer of the plant. The court entered a decree which provided:

"1. Plaintiff, Marvin D. Mix, is declared to be the owner of the sport, Copper Anne, and all indices of ownership resulting therefrom including but not limited to, the right to proceed as the law requires in the processing of his rights to patent, develope [sic] and sale, and that defendant, R. N. Newland, has no claim or right of ownership in said sport.

"2. Defendant, R. N. Newland, is hereby permanently restrained and enjoined from asserting or claiming any rights inconsistent with plaintiff Marvin D. Mix's ownership of Copper Anne."

At the time the trial court entered the decree declaring Mix to be the owner of the chrysanthemum sport, as well as all rights appurtenant to ownership, and restraining Newland from asserting any claims inconsistent with Mix's ownership, the patent dispute was pending in the U.S. Patent Office. The effect of the decree was to restrain Newland from further contesting Mix's claim before the patent board.

On appeal, we affirmed the findings of the trial court and upheld its decree. We concluded that Mix's

---

[1]The United States Patent Office has authority to issue patents on distinct, new plant varieties such as the one here in question. *See* 35 USC § 161 (1970).

[ 193 ]

ownership of the plant also determined the ownership "of any product of that plant, including the commercial value attributable to its uniqueness as a separate specie of chrysanthemum." *Mix v. Newland,* 273 Or 362, 541 P2d 136 (1976). We also considered the jurisdictional issue and we stated:

> "We cannot conceive of any rational system of law which would condone the conversion of an owner's goods to advance the interests of those claiming a monopoly through first discovery. Since this is primarily a question of the extent to which protection should be extended to existing property ownership and only secondarily a question of the rights acquired by first discovery, we are of the opinion that the matter is within the jurisdiction of the state courts and is not pre-empted by federal law for adjudication by the Patent Office." 273 Or at 365.

Subsequently, as a result of the opinion of this court upholding the trial court's decree, plaintiff Mix filed a motion for summary judgment in the matter pending before the Board of Patent Interference in the U.S. Patent Office. Newland filed a brief opposing this motion, contending, inter alia, that exclusive jurisdiction was in the Patent Office and that, in any event, any patent issued to Mix would be invalid for various technical reasons.

On plaintiff-relator's motion, the trial court then cited Newland to show cause why he should not be held in contempt for failure to comply with its decree. After a hearing, the trial court found Newland to be in contempt:

> "Recognizing for the moment the dual characteristics of interest in Copper Anne—inventor vis a vis owner—it is difficult for this court to conceive of many actions more inconsistent with ownership than the defendant's action in the patent office proceeding. The evidence before this court is that Copper Anne has no commercial value unless it can be patented. The plaintiff seeks to realize this financial potential, as an indice of ownership, but is being deprived of a summary determination of the proceeding in the patent office, to which he would otherwise be entitled, by the direct action of the defendant. The conduct of the defendant, is no less con-

temptuous because done on the advice of his patent lawyers. The decree of this court is in plain, unequivocal English language presumably understandable by those involved in the mystiques of patent office procedures."[2]

There are three issues presented in this appeal from the trial court's order finding defendant Newland in contempt. First, did the trial court have the power to enter its original decree restraining Newland from any further proceedings before the federal patent board? Second, if the trial court did not have that power, could it, nevertheless, hold Newland in contempt for his subsequent refusal to obey its decree? Third, could the trial court order Newland to indemnify Mix for the costs and attorney fees which resulted from his defiance of the trial court's decree?

■ We conclude that the trial court was without authority to preclude Newland from any further action in the U.S. Patent Office. A similar issue was before the United States Supreme Court in *Donovan v.*

---

[2]The trial court also ordered that Newland could purge the contempt on performance of certain conditions:

"'* * * * *'.

"2. Defendant R. N. Newland may purge himself of contempt if, within 30 days from the date of this order, he shall take such actions as are necessary to assign and or release to plaintiff Marvin D. Mix, any and all rights R. N. Newland has pending in the Patent Office pertaining to Copper Anne.

"3. Defendant R. N. Newland shall immediately notify the Patent Office of his full and complete assignment and or release to plaintiff and cause his attorneys to take such action as the Patent Laws of the United States may require to terminate any patent application or proceeding of R. N. Newland or those claiming under him inconsistent with the plaintiff's patent and or interference proceeding.

"4. Defendant R. N. Newland shall instruct his attorneys to forthwith, on his behalf, take such action as may be necessary and proper to secure the granting of a summary judgment in such patent proceeding in favor of the plaintiff and to furnish to plaintiff such instruments, documents or papers as may be necessary to comply with all rules and regulations of the Patent Office required to terminate the interference proceeding favorable to plaintiff in said office and before said Board of Interference.

"5. Defendant R. N. Newland shall indemnify plaintiff Marvin D. Mix for all costs and attorneys fees incurred by him in the Patent Office and in this Court subsequent to October 16, 1975."

*City of Dallas,* 377 US 408, 84 S Ct 1579, 12 L Ed 2d 409 (1964). There, a class suit was brought in a Texas state court to enjoin a sale of bonds by the City of Dallas for the construction of improvements at the municipal airport. The Texas courts, including the appellate courts, held in favor of the City of Dallas, and the United States Supreme Court denied certiorari. Later, the same citizens filed suit in a federal district court seeking essentially the same relief, including an injunction against the sale of the bonds. The City filed a motion to dismiss and an answer in the federal court. At approximately the same time, the City also applied to the Texas state court for a writ of prohibition restraining the plaintiffs from proceeding further in the federal district court. The state court denied the writ, but the Texas Supreme Court reversed and ordered the issuance of a writ restraining any action in the federal court. The writ was not obeyed, and the plaintiffs continued their actions in the federal courts. The Texas state court found plaintiffs in contempt and imposed a jail sentence and fines.

The United States Supreme Court granted certiorari and held the Texas court had no power to prevent plaintiffs' actions in the federal court. The Court stated:

"* * * While Congress has seen fit to authorize courts of the United States to restrain state-court proceedings in some special circumstances, it has in no way relaxed the old and well-established judicially declared rule that state courts are completely without power to restrain federal-court proceedings in *in personam* actions like the one here. * * *

"* * * * *

"Petitioners being properly in the federal court had a right granted by Congress to have the court decide the issues they presented, and to appeal to the Court of Appeals from the District Court's dismissal. They have been punished both for prosecuting their federal-court case and for appealing it. They dismissed their appeal because of threats to punish them more if they did not do so. The legal effect of such a coerced dismissal on their

appeal is not now before us, but the propriety of a state court's punishment of a federal-court litigant for pursuing his right to federal-court remedies is. That right was granted by Congress and cannot be taken away by the State. The Texas courts were without power to take away this federal right by contempt proceedings or otherwise." 377 US at 412-14 (Footnotes omitted).[3]

However, the *Donovan* Court remanded the proceeding to the Texas court for a determination of whether the contempt judgment should stand even though the restraining order was invalid.

In remanding for a determination of the contempt judgment, the Court was apparently relying on its decision in *United States v. Mine Workers*, 330 US 258, 67 S Ct 677, 91 LEd 884 (1947).[4] There, the mine workers were found in contempt for disobeying a temporary restraining order and engaging in a nationwide coal strike. On appeal, the defendants contended the trial court had no authority to issue the injunction and sought to set aside the contempt conviction. The Court, quoting from *Howat v. Kansas,* 258 US 181, 42 S Ct 277, 66 LEd 550 (1922), stated:

" 'An injunction duly issuing out of a court of general jurisdiction with equity powers upon pleadings properly invoking its action, and served upon persons made parties therein and within the jurisdiction, must be obeyed by them however erroneous the action of the court may be, even if the error be in the assumption of the validity of a seeming but void law going to the merits of the case. It is for the court of first instance to determine the question of the validity of the law, and

---

[3] The decision drew a strong dissent by three members of the Court, and it has been criticised by several commentators. *See. e.g.* Arnold, *State Power to Enjoin Federal Court Proceedings,* 51 Va L Rev 59, 74-75 (1965); Note, *Anti-Suit Injunctions Between State and Federal Courts,* 32 U Chi L Rev 471, 499-502 (1965).

[4] *See* Arnold, supra n. 2 at 62. *See also,* Carter v. United States, 135 F2d 858 (5th Cir 1943). In *Carter* a district court entered a temporary restraining order after a hearing which challenged the jurisdiction of the court to enter such an order. The defendants violated the order. On appeal, the defendants prevailed, but a contempt finding was upheld on the grounds that the district court had the power to maintain the status quo pending the appeal.

until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished.' " (Footnotes omitted) 330 US at 293-94.

Similarly, in a case arising after *Donovan, Walker v. City of Birmingham,* 388 US 307, 87 S Ct 1824, 18 L Ed 2d 1210 (1967), the court held that several civil rights protesters who had been cited for contempt could not collaterally attack the validity of the injunction which they had knowingly violated in an appeal from their contempt convictions. In affirming their convictions, the court stated:

"The rule of law that Alabama followed in this case reflects a belief that in the fair administration of justice no man can be judge in his own case, however exalted his station, however righteous his motives, and irrespective of his race, color, politics, or religion. This Court cannot hold that the petitioners were constitutionally free to ignore all the procedures of the law and carry their battle to the streets. One may sympathize with the petitioners' impatient commitment to their cause. But respect for judicial process is a small price to pay for the civilizing hand of law, which alone can give abiding meaning to constitutional freedom." 388 US at 320-21. (Footnote omitted.)

The underlying basis for the court's decision in *Walker* was the failure of the civil rights protesters to take advantage of an opportunity to challenge the injunction before violating it. Under such circumstances, the Court held that it would be improper to allow them to raise the issue on appeal from their contempt conviction. *See Walker v. City of Birmingham, supra* 388 US at 315-19; *United States v. Ryan,* 402 US 530, 91 S Ct 1580, 29 L Ed 2d 85 (1971). *Compare In re Green,* 369 US 689, 82 S Ct 1114, 8 L Ed 2d 198 (1962) *with McComb v. Jacksonville Paper Co.,* 336 US 187, 69 S Ct 497, 93 L Ed 599 (1949). *See also North American Coal Corp. v. Local Union 2262, United Mine Workers,* 497 F2d 459, 465 (6th Cir 1974); *Bethlehem Mines Corp. v. United Mine Workers of Amer.,* 476 F2d 860 (3d Cir 1973):

"Appellants made no objection to the order granting injunctive relief, nor was any appeal ever filed from such order. Under these circumstances, and in, view of the above interpretation of the Supreme Court's *United Mine Workers* case and cases cited therein, the appellants will not be heard to attack the validity of the preliminary injunction upon this appeal of the judgment of civil contempt." *Id.* at 866-67.

This appears to be the law in this jurisdiction as well. In *State ex rel v. Downing,* 40 Or 309, 58 P 863, 66 P 917 (1901), this court considered a similar question. Plaintiff had obtained a judgment against defendant Downing and obtained an order requiring Downing to satisfy the judgment. Downing refused to obey the order and was cited for contempt. Although the underlying order was subsequently determined to be erroneously issued, the court held that Downing should be punished for his contempt. The court noted that the order in question was merely voidable and not void,[5] and stated that:

"[T]he rule is universal that a voidable order must be obeyed until it has been set aside in a proper proceeding instituted or prosecuted for that purpose. Mr. Justice Allen, in *People v. Bergen,* 53 N.Y. 404, speaking of a similar order, said: 'If it was improvidently or erroneously granted, the remedy of the party aggrieved was by application to vacate it or by appeal. It is not void, and it cannot be reviewed upon an application to punish for a disobedience of it. So long as it remains in force, the duty of all parties is to obey it, and the merits of the order are not reviewable.' The want of jurisdiction, such as will justify the disobedience of an order of court, must be manifest from an inspection of the proceedings at their inception, and not such as develops during the hearing: * * *. The court had jurisdiction of the proceedings supplemental to execution at their inception, and the issuance of a voidable order therein affords no justifica-

[5]Since the trial court in this case had both jurisdiction of the subject matter and jurisdiction over the parties, its decree, though in excess of its proper authority, was not void but merely voidable. *See, e.g., Howat v. Kansas,* 258 US 181, 293-94, 42 S Ct 277, 66 LEd 550 (1922); *Bethlehem Mines Corp. v. United Mine Workers,* 476 F2d 860, 862-63 and n. 4 (3d Cir 1973). *See also State v. LaFollette,* 100 Or 1, 7-8, 196 P 412 (1921).

tion for a disobedience thereof * * *." 40 Or at 321-22 (Citations omitted.)

*Accord State ex rel Hewson v. Hewson,* 129 Or 612, 617-18, 277 P 1012 (1929); *State v. La Follette,* 100 Or 1, 7-8, 196 P 412 (1921); *Helms Groover & Dubber Co. v. Copenhagen,* 93 Or 410, 418, 177 P 935 (1919).

In essence, these decisions stand for the following general proposition. If a court has jurisdiction over the parties and the subject matter, and its order or decree is not complied with, that court may hold the noncomplying party in contempt even if it later appears that the original order or decree was either erroneous or in excess of the court's authority. The integrity of the judicial process demands compliance with court orders until such time as they are altered by orderly appellate review. Litigants are not entitled to sit in judgment on their own cases, and they must follow the appropriate channels for review of decisions they believe to be invalid. Unless and until an invalid order is set aside, it must be obeyed. Only when there has been no other opportunity to raise the issue can the validity of the underlying order be litigated in a subsequent contempt proceeding.

As the trial court found in this case, Newland clearly and wilfully violated the circuit court's decree which was entered on the mandate of this court.[6] He did not appeal the decision of this court or take any other action to modify the trial court's injunction. Although it now appears that the decree was invalid, it was not void, and Newland may properly be punished for his contemptuous conduct in defiance of the trial court's injunction.

The trial court, however, did not impose a penalty on defendant for his conduct, but gave him 30 days in which to purge himself of contempt by taking "such actions as are necessary to assign and or release to

---

[6] As a result of our decision in the previous suit, the trial court issued its decree on the mandate. This decree was identical in all material respects to the prior decree which we have quoted above.

plaintiff Marvin D. Mix, any and all rights R. N. Newland has pending in the Patent Office pertaining to Copper Anne" and to take other actions in the patent office to secure plaintiff a patent on the Copper Anne. Under *Donovan v. City of Dallas, supra,* we must conclude that the trial court has no authority to compel defendant to take such actions in connection with the federal patent proceedings. However, on remand the trial court may, in its discretion, impose some appropriate sanction on defendant for his contempt of its earlier injunction. This the trial court has authority to do, even though that order has subsequently been found to be invalid. *State ex rel v. Downing, supra. See also Donovan v. City of Dallas, supra; United States v. United Mine Workers, supra; Howat v. Kansas, supra.*

■ Defendant also assigns as error that portion of the trial court's order which requires him to indemnify plaintiff for all costs and attorney fees incurred in the Patent Office and in the trial court after the prior mandate from this court. In light of our decision that the trial court had no authority to order defendant to refrain from further proceedings in the Patent Office, we feel that it would be inappropriate to require defendant to reimburse plaintiff for the expenses that followed. *See Bessette v. W. B. Conkey Co.,* 194 US 324, 329, 24 S Ct 665, 48 LEd 997 (1904); *Universal Athletic Sales Co. v. Salkeld,* 511 F2d 904, 909-10 (3d Cir 1975); *Brotherhood of Locomotive Fire & Eng. v. Bangor & Aroostook R.R.,* 420 F2d 72, 74 (DC Cir 1969), *cert. denied* 397 US 1024 (1970); *But see Bethlehem Mines Corp. v. United Mine Workers,* supra at 864-67; *NLRB v. Local 282, International Bro. of Teamsters,* 428 F2d 994, 998-99 (2d Cir 1970). *Cf. Consolidated Coal Co. v. United Mine Workers,* 537 F2d 1226, 1232 (4th Cir 1976).

Reversed and remanded.