Argued and submitted March 15, CA A46738 dismissed as moot; CA A46739 reversed; CA A47382 affirmed October 18, 1989, reconsideration denied February 23, petition for review denied April 3, 1990 (309 Or 645)

## STATE OF OREGON,
*Respondent,*

*v.*

## BRENDA BEAM NEFSTAD,
*Appellant.*

(C 87-11-36208; CA A46738 (Control)
C 87-11-36210; CA A46739
C 87-12-37479; CA A47382)
(Cases Consolidated)

781 P2d 358

Michael Curtis, Portland, argued the cause and filed the brief for appellant.

Timothy Sylwester, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Graber, Presiding Judge, and Riggs and Edmonds, Judges.

GRABER, P. J.

Edmonds, J., concurring in part; dissenting in part.

## GRABER, P. J.

Defendant appeals from three separate contempt judgments that arose from her refusals to testify at various stages of the aggravated murder trial of Reyes Miranda and Stephen Nefstad, her husband.[1] In the first case, the court held defendant in civil contempt. ORS 33.020(2). In the second and third cases, it held her in both civil and criminal contempt. ORS 33.020.[2] Defendant argues in the first and second cases that she may not be held in contempt for refusing to testify "at a stage in [the] proceeding when there is no cognizable purpose in having her testify." She asserts in the second and third cases that the "principles of double jeopardy and *res judicata* protect a contemnor-witness from multiple punishments and multiple judgments when she refuses to testify multiple times in the same proceeding." We dismiss the first appeal as moot, reverse defendant's conviction in the second case, and affirm in the third.

Near the end of jury selection in the murder trial, the attorney for one of the murder defendants told the prosecutor that defendant might refuse to testify. At the prosecutor's request, the trial court interrupted jury selection and held a hearing to learn defendant's intentions and to permit the state to take defendant's testimony at that time, so that it would be available for use during the trial if she later refused to testify or otherwise became unavailable. The court rejected defendant's argument that the proceeding was actually an impermissible deposition. *See* ORS 136.080 to ORS 136.100; ORS 136.420.

---

[1] Defendant married Nefstad after the events about which the state wanted her to testify. She asserts no privilege on account of that relationship. *See* OEC 505(4)(b).

[2] ORS 33.020 provides:

"(1) Every court of justice and every judicial officer has power to punish contempt by fine or imprisonment, or both; but such fine shall not exceed $300 nor the imprisonment six months, except in the cases mentioned in subsection (2) of this section; and when the contempt is not one of those mentioned in ORS 33.010(1)(a) and (b), or in ORS 1.240(1), it must appear that the right or remedy of a party to an action, suit or proceeding was defeated or prejudiced thereby before the contempt can be punished otherwise than by a fine not exceeding $100.

"(2) In addition to the punishment provided for in subsection (1) of this section, the court or judge shall have power to constrain performance of any lawful order, judgment or decree of such court or judge, by imprisonment of the person failing or refusing to comply, until the order, judgment or decree has been complied with."

The state then called defendant as a witness. The hearing had no purpose other than to determine whether defendant would testify and what that testimony would be. She refused to be sworn, stating that she did not know whether she would be truthful. The court found her in civil contempt and committed her to jail until she should purge herself of the contempt by testifying.

After the jury had been selected but before it was sworn, the state again called defendant as a witness. The district attorney explained that, if she again refused to be sworn, "I am going to ask the Court to hold her in criminal contempt as opposed to the civil contempt that she was held in on Friday." Defendant took the oath. When the district attorney asked her if she was related to Nefstad, one of the murder defendants, she declined to answer on the ground that she might incriminate herself. The district attorney then said that no testimony that defendant gave would be used against her in any way and that she would not be prosecuted for any crime that her testimony might reveal. After a grant of immunity,[3] the court ordered her to answer the question; she refused. She also refused to answer whether she was cohabiting with her then future husband on March 12, 1987. She stated, in response to another question, that, if the district attorney were to ask additional questions concerning events around the time of the murder and for several weeks thereafter, she would refuse to answer. The court, after reading a transcript of a police interview with defendant, found that she could give

---

[3] It appears from the colloquy between counsel and the court that both the prosecutor and the court believed that the court had no authority to grant immunity and that only the prosecution could do so. They apparently believed that, although *State v. Soriano,* 68 Or App 642, 684 P2d 1220, *opinion adopted* 298 Or 392, 693 P2d 26 (1984), held that the statutory immunity provided in a previous version of ORS 136.619 was inadequate under Article I, section 12, the state retained inherent authority to grant adequate immunity. That belief was incorrect. "The authority to immunize witnesses derives solely from statute. The decision to create immunity, and the nature of that immunity, is a legislative matter." *State v. White,* 96 Or App 713, 716, 773 P2d 824 (1989). The state and the court were also apparently unaware that, after *Soriano,* the legislature amended ORS 136.619 to provide constitutionally adequate immunity. Or Laws 1985, ch 709, § 1. Despite those misconceptions, the court did attempt to follow some of the procedures of ORS 136.617 before it ordered defendant to testify, and defendant does not argue that she did not receive constitutionally adequate immunity. We therefore assume that defendant would have been immune from prosecution for any offense that she disclosed in her testimony, had she testified.

probative testimony in the murder trial and held her in criminal and civil contempt. It sentenced her to six months imprisonment and also ordered that she remain in jail until she had complied with the order to testify.

During the murder trial, the state again called defendant as a witness. Because of her previous refusals, it did so outside the presence of the jury. She refused to take the stand or to be sworn. In response to the court's questions, she stated that, if she took the stand, she would continue to refuse to answer the district attorney's questions.[4] The court again found her in contempt, imposed a criminal sentence that was concurrent with the time remaining on the previous one, and ordered her held until she had testified.

■    Defendant appealed all three judgments. While the appeals were pending, but after the conclusion of the murder trial, the trial court vacated the judgments to the extent that they had ordered defendant held until she had testified. Because the first judgment only committed defendant to jail until she had testified, that case is now moot. We dismiss that appeal. Moreover, we consider only the criminal aspects of the other judgments.

■    The state first argues that, in an appeal from a contempt judgment, a defendant may not collaterally attack the propriety of an underlying order to testify. In *State v. Crenshaw,* 307 Or 160, 168, 764 P2d 1372 (1988), the Supreme Court held that

> "a challenge to the merits of the underlying order may be made in any appeal from an order of contempt where, for constitutional, statutory or practical reasons, no other remedy, either by appeal or mandamus, was available." (Footnote omitted.)

Defendant was not a party to the murder trial and thus could not have appealed any judgment entered in it. Mandamus would be impractical, because the matter relates to a criminal trial in which she is not a party. She has "no other opportunity to raise the issue [of] the validity of the underlying order" except by appealing the judgments of contempt. *State ex rel*

---

[4] The district attorney also offered to dismiss several charges against defendant in Washington and Multnomah Counties if she would testify. She continued to refuse.

*Mix v. Newland,* 277 Or 191, 200, 560 P2d 255 (1977). There-fore, in these appeals she can challenge the orders to testify.

██ In her second assignment of error,[5] defendant argues that the court had no authority to call her as a witness before it had sworn the jury, because there was then no factfinding proceeding for which her testimony was necessary. She is partially correct. Although the court could properly call her when it did in order to determine whether she would testify at the trial, it could not order her to answer any questions that did not relate to whether she would testify.

The state argues that the trial court had "a legitimate reason for ascertaining pretrial whether [defendant] would testify, and thus it was within the court's discretion to order her to testify at the pretrial hearing." We agree that it was within the trial court's discretion in managing the case to try to determine as early as possible whether defendant would testify. The state intended to summarize defendant's expected testimony in its opening statement. If she thereafter were to refuse to testify, a mistrial was likely. The problem is that the trial court did not simply determine whether defendant would testify. After she clearly stated that she would not, it ordered her to give the substance of her testimony and found her in contempt when she refused. The question is whether the court had the authority to order defendant to give her testimony at that time.

A trial court's authority to compel testimony derives from the constitution and the statutes. Although a court may compel a witness to testify at trial and at other authorized proceedings, Or Const, Art I, § 11; ORS 136.555 to ORS 136.567, the testimony that it may compel is limited by the stage of the trial. In this case, the court ordered defendant to provide substantive evidence at a time in the trial when it had no authority to do so.

If the issue had arisen before the trial began, the court would have had authority under ORS 135.037 to order a hearing to determine what defendant intended to do. That statute provides, in pertinent part:

---

[5] Defendant's first assignment relates to the judgment that we dismiss as moot.

> "(1)  At any time after the filing of the accusatory instrument in circuit court and before the commencement of trial thereon, the court upon motion of any party shall, and upon its own motion may, order an omnibus hearing.
>
> "* * * * *
>
> "(3)  The court, at the time of the omnibus hearing, may also consider any matters which will facilitate trial by avoiding unnecessary proof or by simplifying the issues to be tried, or which are otherwise appropriate under the circumstances to facilitate disposition of the proceeding."

The court knew that the murder trial would last several weeks, that defendant's testimony was an important part of the state's case, and that her refusal to testify might produce a mistrial. Holding a hearing to determine whether she would testify would certainly have been "appropriate under the circumstances to facilitate disposition of the proceeding." However, nothing in the statute authorized taking defendant's testimony, as distinct from simply determining whether she would testify.

Because the problem did not arise until after the trial began, ORS 135.037 does not directly authorize what the court did. However, that statute recognizes the broad discretion that a trial court must have to prepare for and manage the conduct of a trial. Although there is no specific statute saying so, a trial court has the same discretion after the trial begins. The trial court's decision to call defendant after the jury was selected in order to determine whether she would testify was within that discretion.

■■ Although the trial court's discretion is broad, it is still limited by the rules governing the conduct of the trial. The court may not order the taking of evidence before the jury is sworn. It may change the normal order of taking evidence thereafter, but the rules do not permit the taking of *any* evidence in a criminal trial until that time. ORCP 58B.[6] After the jury is sworn, all testimony "shall be given orally in the presence of the court and jury," unless it was taken "by deposition by order of the court in pursuance of the consent of the parties" and in circumstances that do not apply in this case. ORS 136.420. In ordering defendant to testify on the substance of

---

[6] Under ORS 136.330(1), ORCP 58B applies to the conduct of criminal trials.

the case before the jury was sworn, the court sought, in effect, to preserve her evidence by a deposition that did not comply with the statutory requirements for depositions in criminal cases. *See State ex rel O'Leary v. Lowe,* 307 Or 395, 401, 769 P2d 188 (1989).[7] The statutes do not permit that. The trial court erred in holding defendant in contempt for her actions on November 3, 1987.

■      The state suggests that ORS 136.617 may authorize the trial court's actions. It provides:

> "In any criminal proceeding before a court of record or in any proceeding before a grand jury, or in any proceeding before a court of record under ORS 646.760, if a witness refuses to testify or produce evidence of any kind on the ground that the witness may be incriminated thereby, the prosecuting attorney may move the court to order the witness to testify or produce evidence. The court shall forthwith hold a summary hearing at which the prosecuting attorney shall show reasonable cause to believe the witness possesses knowledge relevant to the proceeding, or that no privilege protects the evidence sought to be produced. The witness may show cause why the witness should not be compelled to testify or produce evidence. The court shall order the witness to testify regarding the subject matter under inquiry upon such showing of reasonable cause or shall order the production of evidence upon a finding that no privilege protects the evidence sought, unless the court finds that to do so would be clearly contrary to the public interest. The court shall hold the summary hearing outside the presence of the jury and the public and may require the prosecuting attorney to disclose the purpose of the testimony or evidence. The witness shall be entitled to be represented by counsel at the summary hearing."

ORS 136.617 is part of the witness immunity law adopted in 1971. Or Laws 1971, ch 266, § 1; *see also* ORS 136.619. It provides a procedure when a witness asserts the right against self-incrimination and the state wants to obtain the testimony under a grant of immunity. No issue can arise under the statute unless there is a "criminal proceeding" in which a person has been properly called to testify on issues relevant to the case. The statute assumes (for example, by using the phrase

---

[7] Although the relevant Oregon cases involve one party's attempt to gain access to witnesses of the other party, while here the state sought testimony from its *own* witness, the principle is the same: The trial court lacks the authority to compel a pretrial interview in a criminal case.

"outside the presence of the jury and the public") that authority to call the witness comes from some other source and that the witness has been called in the normal course of a trial or other proceeding. The only additional hearing that the statute authorizes is for the purpose of enabling the court to decide whether to grant immunity, and it can occur only after the witness has already asserted the right not to testify. ORS 136.617 is not an independent source of authority to take testimony.

■ ■ Defendant, argues, finally, that the court could not hold her in contempt for refusing to testify during trial, because principles of double jeopardy and *res judicata* protect her from multiple punishments and multiple judgments for refusing to testify several times in the same proceeding. The argument is without merit. Defendant's refusals to testify were separate events during different types of hearings at different times. Assuming that a constitutional double jeopardy analysis applies, *see State v. Thompson,* 294 Or 528, 659 P2d 383 (1983), the contempts did not constitute the same offense. *See* ORS 131.505(4); *State v. Farley,* 301 Or 668, 672, 725 P2d 359 (1986). Similarly, *res judicata* did not bar the second or the third contempt proceeding. Defendant makes no other assignment of error relating to the last contempt. We therefore affirm that judgment.

Appeal in circuit court case C-87-11-36208 dismissed as moot; judgment in circuit court case C-87-11-36210 reversed; judgment in circuit court case C-87-12-37479 affirmed.

**EDMONDS, J.,** concurring in part; dissenting in part.

The trial court's comments regarding the state's ability to use defendant's testimony if she testified pretrial and later refused to testify were made during the October 30 hearing in which defendant was held in civil contempt for refusing to be sworn as a witness. The majority holds that issue to be moot. I agree.

On November 3, 1987, during jury selection and out of the presence of the jury, the prosecutor requested a hearing pursuant to ORS 136.617. His purpose was to determine if defendant was going to continue to refuse to testify. If so, he

intended to request that she be held in criminal contempt. Defendant objected on the basis that the jury had not been sworn and there was no factfinding body to hear her testimony. The trial court overruled defendant's objection, holding that it would be highly prejudicial to the defendants in the murder trial if defendant were called to the witness stand and then refused to take the oath.

The majority holds that the trial court erred in overruling defendant's objection and holds that it should have continued the hearing until defendant was called as a witness in the normal course of trial. The majority states:

> "Although the court could properly call defendant when it did in order to determine whether she would testify at the trial, it could not order her to answer any questions that did not relate to whether she would testify."

After the trial court overruled defendant's objection, she was called to the stand. That time she consented to being sworn. She was first asked if she was related to one of the defendants in the murder trial. She invoked her Fifth Amendment privilege. The state offered her immunity. The court made the findings required by ORS 136.617 and ordered her to testify. The court said:

> "I will order you to testify and to answer the questions posed to you, Mrs. Nefstad, and caution you that I would be required to punish you for contempt if you refuse to do so."

Defendant replied:

> "I respectfully decline, Your Honor."

The prosecutor requested that the court hold defendant in criminal contempt and then asked:

> Question: "[W]ell, before I ask for that finding, Your Honor, can I direct one further question to the witness?
>
> Court: "All right.
>
> Question: "Mrs. Nefstad, on April 12th of this year, is it not a fact that you were not married to the Defendant but you were in fact cohabitating with him, the Defendant Nefstad, I should say?
>
> Answer: "I decline.
>
> Question: "And, Mrs. Nefstad, let me ask you this: If I were to ask you a series of questions concerning the events of April

12th and the two or three weeks following those events and the conduct of both Nefstad and Miranda during that time, would you decline to answer those questions as well?

Answer: "Yes.

Question: "Would you decline to answer questions concerning those events if I asked them now following the Court's order to you to answer?

Answer: "Yes."

Contrary to the majority's suggestion, what the trial court was doing was allowing the prosecutor to make a record under the dictates of ORS 136.617 by ascertaining if in fact defendant was refusing to testify. Defendant's objection was based on the fact that the court was holding the hearing authorized by that statute before the jury was sworn. As the majority acknowledges, a court has the discretion to determine whether a witness is going to refuse to testify at any time during a criminal proceeding. I dissent from that portion of the majority opinion.

The majority and I also differ as to the contempt that occurred on December 4, 1987. The majority holds that defendant's refusals to testify were separate events during different types of hearings at different times and, even assuming that a constitutional double jeopardy analysis applies, the contempts did not constitute the same offense. I disagree. Defendant's refusals to testify were part of a continuing contempt for refusing to testify during the same criminal trial. Under these circumstances, her refusals to testify do constitute the same offense, and I would hold that only one criminal punishment could be imposed.

For these reasons, I dissent.