In the Matter of the Marriage of

Barbara M. BARRETT,
nka Barbara M. Young,
*Respondent on Review,*

*and*

Daniel E. BARRETT,
*Petitioner on Review.*

(CC D8608-65792; CA A72437; SC S41173)

886 P2d 1

Mark A. Johnson, of Findling & Johnson, Portland, argued the cause and filed the petition and brief for petitioner on review. With him on the brief was Jacqueline L. Koch, of Gevurtz, Menashe, Larson, Kurshner & Yates, P.C., Portland.

John Paul Graff, of Graff & O'Neil, Portland, argued the cause and filed the brief for respondent on review.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Unis, and Graber, Justices.

FADELEY, J.

## FADELEY, J.

This civil contempt matter arises in the aftermath of the dissolution in 1986 of the parties' 27-year marriage. Husband challenges the trial court's finding that he is in contempt for failure to provide wife with medical insurance that he was ordered to provide by the judgment of dissolution. His challenge is based on wife's failure to seek and obtain a job that provides her with medical insurance. Husband contends that wife had (and continues to have) an implied or "good faith" obligation under the marital settlement agreement, signed by the parties, to get a job that provides medical insurance through her employer and that, because wife has failed to meet that obligation, he is excused from meeting his.

When husband determined in 1989 that wife was not seeking employment, husband advised her by letter that he would stop providing health insurance coverage or paying one-half of her uninsured medical bills at the end of 1989 because of her "not returning to work." A year or so after husband terminated payment of wife's health insurance and other medical bills, wife instituted this proceeding for contempt.

The trial court found husband in contempt, stating in part:

"It is not the policy of the law and it's certainly never desirable for legal principles to evolve which empower parties to make unilateral decisions when there are written documents and orders as to the rights of the parties. The law disfavors scenarios in which one party gets to decide what his or her rights and obligations are."

Broadly stated, the issue is whether, when husband unilaterally stopped providing health insurance for wife, husband had been excused from compliance with part of the dissolution judgment by reason of wife's asserted noncompliance with other parts of that judgment and could, because of that excuse, terminate those benefits. The Court of Appeals concluded that husband could not do so and upheld the judgment of contempt against him. *Barrett and Barrett*, 126 Or App 62, 867 P2d 540 (1994). We affirm the decision of the Court of Appeals.

In 1986, husband and wife entered into a stipulated dissolution judgment that ended their 27-year marriage. The stipulated judgment expressly incorporated the parties' marital settlement agreement (agreement) and ordered both of them to abide by its terms. The judgment "ordered, adjudged and decreed":

"The Marital Settlement Agreement of the parties, dated October 10, 1986, effective upon approval by the Court, is hereby ratified, approved and incorporated by reference herein in its entirety, *and the parties are ordered to abide by its terms and conditions.*"[1] (Emphasis added.)

The agreement contemplated that wife would obtain further education and that husband would pay for wife's education for three years following the dissolution. Paragraph 1 of the agreement provided, in part:

"The parties intend that Wife will obtain further education during approximately the next three years and will then be able to earn approximately $17,000 to $22,000 per year on a full time basis."

Paragraph 10 provided:

"Husband agrees to provide all tuition and book fees necessary for Wife to attend either full time or part time, any state-supported college or university, or any business or trade school of her choice within the State of Oregon for a period of three (3) years from the date the Decree of Dissolution is signed. The parties intend that Husband's payment of books and tuition fees is property settlement and not spousal support."

The agreement also provided that husband would furnish health insurance to wife and pay one-half of her uninsured medical costs until she was employed and received health insurance through her employer. Section 11 of the agreement provided, in part:

"Husband agrees to provide health insurance coverage for Wife, equivalent to what Wife now has, through his

---

[1] This opinion will refer to this portion of the judgment either as the "judgment" or "order contained in the judgment." The parties agreed in their marital settlement agreement, section 16, that "any Decree entered * * * [will] require each party to comply with all of the terms" of that agreement. Thus, the contract between the parties contemplated that a judgment would be entered and that the judgment of the court would require compliance with the agreement.

employer for eighteen (18) months from the date the Decree of Dissolution is signed. Thereafter, Husband agrees to furnish or pay for equivalent health insurance coverage for Wife until such time as Wife is employed and has health insurance provided through her employer. Husband further agrees to pay one-half of all of Wife's medical, dental and optical costs not covered by insurance, now owing or hereafter incurred, until Wife has her own health insurance coverage. * * * The parties intend that Husband's payment of health insurance premiums, and all medical, dental, optical and psychological payments provided for in Section 11 are property settlement and not spousal support."

As can be seen, unlike section 10, the paragraph concerning medical costs assistance contains no mention of a time period for automatic termination of the agreed assistance. Also, the agreement expressly provides that the payment of wife's insurance and other medical costs were part of the property settlement between the parties, not spousal support. Because the parties and the trial court have dealt with the medical assistance payments as part of the property settlement, we do so also for purposes of this case.[2]

On reconsideration, the Court of Appeals decided that the "discrete order" contained within the judgment — that the parties are ordered to abide by the terms of the agreement — allowed wife to maintain the contempt proceeding based on husband's failure to provide health insurance as he was directed by that order to do. *Barrett and Barrett, supra*, 126 Or App at 66-68. Thus, in effect, the Court of Appeals decided the case on a basis that did not involve the agreement or its status. The court further decided that wife's alleged breach of her "good faith" obligation to seek employment did not relieve husband of his duty to comply with the discrete court order to abide by the agreement.[3] *Id.* at 67-68.

---

[2] *See Pope and Pope*, 301 Or 42, 45, 718 P2d 735 (1986) (citing *Prime v. Prime*, 172 Or 34, 49-50, 139 P2d 550 (1943), discussing inability to modify "presently executed provisions of the property settlement * * * approved by the court as of * * * the final decree," in contrast with "executory provisions of the decree * * * to be performed under conditions").

[3] The Court of Appeals opined: "[Wife's] noncompliance with the order [to seek employment] could subject her to contempt proceedings but it does not entitle husband to terminate unilaterally his obligations under the court's order to provide health insurance." *Barrett and Barrett*, 126 Or App 62, 68, 867 P2d 540 (1994).

Accordingly, the Court of Appeals affirmed the judgment of contempt. *Id.* at 68.

Under the statute in effect at the time husband was found in contempt, *former* ORS 33.010(1)(e) (1989),[4] a *prima facie* case of contempt is shown by proof of: "(1) the existence of a valid court order; (2) the contemnor's knowledge of the order; and (3) voluntary noncompliance with the order." *Couey v. Couey*, 312 Or 302, 306, 821 P2d 1086 (1991). Although "willfulness" does not appear in the text of *former* ORS 33.010(1)(e), "this court has long recognized the requirement of 'willfulness.' " *Id.* at 304. Husband does not dispute the existence of a valid court order and does not dispute that he had knowledge of the order. However, husband argues that he is not in contempt for a variety of reasons.

First, husband argues that a required finding of fact as to his mental state is lacking. He argues that the trial court must make a finding of "bad intent" before it may find him guilty of contempt. He further argues that, when he stopped paying for wife's health insurance, he acted in good faith. The trial court rejected husband's argument and found him in "willful contempt." As stated in *Couey*, "a finding of willful disobedience of a valid court order *is* a finding that the contemnor acted with bad intent and is sufficient to support a judgment of contempt." *Id.* at 306 (emphasis in original). Thus, the trial court's finding of willful violation of the known court order is sufficient to supply the mental state required to support a judgment of contempt.

Husband next argues that he is relieved from his obligations under the dissolution judgment, because wife's asserted failure to fulfill her implied obligation to seek employment under the judgment constituted a material breach of contract, thereby discharging his duty to perform his part of the contract related to that breach (*i.e.*, to provide

---

[4] Under *former* ORS 33.010(1)(e) (1989), "[d]isobedience of any lawful judgment, decree, order or process of the court" constituted contempt "of the authority of the court." *Former* ORS 33.010 was repealed by Oregon Laws 1991, ch 724, § 32, and was replaced by ORS 33.015. Under ORS 33.015(2)(6), "[d]isobedience of, resistance to or obstruction of the court's authority, process, orders or judgments," if done "willfully," constitutes contempt of court. The parties do not make any argument based on the differences between the 1989 and 1991 versions of the contempt statutes.

health insurance). Husband cites *Waterman v. Armstrong*, 291 Or 551, 633 P2d 774 (1981); *Finlay-Wheeler v. Rofinot*, 276 Or 865, 556 P2d 952 (1976); and *Carothers v. Carothers*, 260 Or 99, 488 P2d 1185 (1971). He relies on those cases to argue that the agreement has not merged into the judgment of dissolution and, therefore, that wife must sue on the contract (the promises in the marital settlement agreement) rather than proceed against him for contempt for disobeying the judgment.

■ Under the "merger" doctrine, once a claim is reduced to a judgment, the claim is extinguished because it is "merged" into the judgment and rights upon the judgment are substituted for the former claim. *Waterman v. Armstrong, supra.* Accordingly, when a claim arising from a contract is held to have merged into a judgment, a party cannot maintain an action on the contract for those claims, but may enforce the judgment only, *Rigdon v. Rigdon*, 219 Or 271, 276-79, 347 P2d 43 (1959) (enforcing in Oregon a Nevada divorce decree); *Ryckman v. Manerud*, 68 Or 350, 361, 136 P 826 (1913) (holding that original demand for money "upon which the judgment is based is merged in the judgment," and claimant may only enforce the judgment).

The merger theory, and its no-merger result argued for in this case by husband, is important to husband because it is a necessary part of his argument that the contract, not the dissolution judgment, is what wife is attempting to enforce. If husband were able to establish that wife's contempt citation enforces the contract rather than the judgment, he could then argue that her breach of her implied promise to seek employment, and to obtain health insurance through that employment discharged his contractual obligation that arose from his promise to provide health insurance and other medical cost assistance until wife got a job and had insurance through that job.

The record indicates that wife seeks to enforce a provision of the judgment, however, not a contract promise. The judgment of dissolution expressly "ratified, approved and incorporated by reference herein" the agreement and then *"ordered"* the parties "to abide by its terms and conditions." (Emphasis added.) Whether or not the promises stated in the agreement were or were not merged into the

judgment of dissolution, that order remains and, as an order of the court, is an appropriate subject for enforcement by contempt. *Former* ORS 33.020(2) (1989) replaced in part by ORS 33.025 (1991).

Thus, husband's no-merger argument is beside the point, because wife may enforce the court's judgment without claiming or relying on the doctrine of merger. She needs no benefit of a merger to base her claim of contempt of court on husband's violation of an order expressly contained in the dissolution judgment. Nor would an assumption that there is no merger of the husband's promise in the judgment that requires him to keep the terms of that promise make that judgment any less valid. Having established that the contempt proceeding is based on the order contained in the judgment and is not based on a claim resting on a promise from an agreement and, therefore, that the "no-merger" argument is not relevant to the disposition of this contempt case, we turn to husband's remaining arguments.

■ Husband asserts that, because of wife's failure to seek employment as impliedly promised, a "contract" defense excuses him from complying with the order in the judgment. He argues that wife's breach of her promise made in the agreement excuses him from complying with that part of the court's judgment to which her breach most relates, *i.e.*, to the provision of the court's judgment that orders husband to provide medical insurance and other medical cost assistance.

Husband bases his claim on the concept that he is excused from the obligation imposed by the judgment. He argues, without attacking the judgment or disputing the terms of the order contained within it, that his conduct violates no order of the court, because he is now excused from, and may unilaterally terminate, compliance with the order contained in the judgment. Husband's ability unilaterally to disregard the order contained in the judgment arises, he argues, because of wife's breach of her settlement-agreement promise that is related to medical assistance.

Husband's argument does not claim that the order contained in the judgment is or was invalid. Thus, it is not a collateral attack on the underlying order contained in the judgment that husband has disobeyed. Husband's argument

nonetheless would make that order as much a nullity as it would be if it were subjected to a successful collateral attack. That is true because, in the contempt proceeding, husband seeks to nullify the obligation to obey the court's order that he provide medical cost assistance.

■     Even though husband makes no collateral attack, the law related to such attacks is instructive here, because his argument would also nullify reliance on the order contained in the dissolution judgment as a basis for the contempt proceeding. As a general rule, a contemnor may not attack the underlying judgment that he or she violated in an appeal of a judgment of contempt, although there are exceptions to that rule. *State ex rel Mix v. Newland,* 277 Or 191, 200, 560 P2d 255 (1977). In *Newland,* this court held:

> "If a court has jurisdiction over the parties and the subject matter, and its order or decree is not complied with, that court may hold the noncomplying party in contempt even if it later appears that the original order or decree was either erroneous or in excess of the court's authority. The integrity of the judicial process demands compliance with court orders until such time as they are altered by orderly appellate review. Litigants are not entitled to sit in judgment on their own cases, and they must follow the appropriate channels for review of decisions they believe to be invalid. Unless and until an invalid order is set aside, it must be obeyed. Only when there has been no other opportunity to raise the issue can the validity of the underlying order be litigated in a subsequent contempt proceeding." *Ibid.*[5]

---

[5] Husband did not avail himself of other opportunities to challenge his wife's alleged failure to attempt to complete her education or to carry out the asserted obligations of the agreement to seek employment actively. Husband does not question whether he could have entered court seeking a decision that wife is guilty of contempt on the basis that wife had failed to meet *her* obligations under the judgment of dissolution that ordered her to abide by the terms and conditions of the incorporated agreement. A brief review of applicable contempt statutes indicates that they at least provided and presently provide that opportunity.

In 1989, ORS 33.010(1)(e) defined "contempt" in part, as the "[d]isobedience of any lawful judgment, decree, order or process of the court." ORCP 78 B also provided, in part:

> "The court or judge thereof may enforce an order or judgment directing a party to perform a specific act by punishing the party refusing or neglecting to comply therewith, as for a contempt as provided in ORS 33.010 through 33.150."

In 1989, ORS 33.020(2), provided, in part:

> "In addition to the punishment provided for in subsection (1) of this section

The trial court did not, as husband claims, prevent husband from asserting or explaining his "defense," but instead held that the claimed defense did not excuse him from compliance with the court's judgment.[6] We agree with that holding. Thus, this case rests on the court's judgment as it presently exists, containing an order that husband agreed should be in the dissolution judgment that directs husband to provide medical cost assistance that he has unilaterally ceased to provide. This court stated the following principle in *Newland*: "The integrity of the judicial process demands compliance with court orders until such time as they are altered." 277 Or at 200. Self-help disobedience is not an acceptable solution in that situation. Even though the sentence quoted comes from a case on collateral attacks, it states an important principle that is applicable to this contempt case because a court's judgment is its foundation. Husband here did precisely what the *Newland* principle admonishes against

---

[which discusses fine or imprisonment], the court or judge shall have power to constrain performance of any lawful order, judgment or decree[.]"

In 1991, ORS 33.105 became effective. Paragraphs (d) and (f) thereof, appear to afford a broad range of remedies:

"Unless otherwise provided by statute, a court may impose one or more of the following remedial sanctions:

"* * * * *

"(d) An order designed to insure compliance with a prior order of the court, including probation.

"* * * * *

"(f) A sanction other than the sanctions specified in paragraphs (a) to (e) of this subsection if the court determines that the sanction would be an effective remedy for contempt."

ORS 33.015(4) broadly defines "remedial sanction" to mean

"a sanction imposed to terminate a continuing contempt of court or to compensate for injury, damage or costs resulting from a past or continuing contempt of court."

[6] In addition to the statements of the trial court quoted near the beginning of this opinion, the trial court also explained its decision, in part, as follows:

"The evidence did not establish that Mr. Barrett had the right to cease [medical cost assistance]."

"Until two events occur Husband is obliged to maintain health insurance for his former wife. Those two conditions have never come into being."

The Court of Appeals commented:

"Her noncompliance with the order * * * does not entitle husband to terminate unilaterally his obligation under the court's order to provide health insurance." *Barrett and Barrett, supra*, 126 Or App at 68.

— he sat in judgment of his own case and unilaterally terminated wife's health benefits in violation of the order contained in the judgment of dissolution. That fact justified the finding of and punishment for contempt.

Accordingly, the decision of the Court of Appeals is affirmed. The judgment of the circuit court is affirmed.