Argued and submitted August 20, 2013, affirmed September 4, petition for review denied December 11, 2014 (356 Or 575)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## FRANCIS BENITO LUCERO,
*Defendant-Appellant.*

### Clackamas County Circuit Court
CR1013801; A149756

335 P3d 1275

Jonah Morningstar, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Paul L. Smith, Attorney-in-Charge, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Douglas F. Zier, Senior Assistant Attorney General.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and De Muniz, Senior Judge.

DE MUNIZ, S. J.

## DE MUNIZ, S. J.

Defendant appeals a judgment of conviction for one count of criminal trespass in the first degree, ORS 164.255, and one count of harassment, ORS 166.065(3). He argues on appeal that the trial court erred in excluding evidence supporting defendant's belief that the legal proceedings resulting in his eviction from a foreclosed property were unlawful. For the reasons that follow, we affirm the judgment of conviction.

We state the facts in the light most favorable to the state. *State v. Williams*, 313 Or 19, 828 P2d 1006 (1992). A bank obtained a foreclosure judgment and subsequently brought a forcible entry and detainer (FED) action to remove defendant from the foreclosed property. On November 19, 2010, Clackamas County Sheriff deputies Finn and Pownall went to the foreclosed property to serve a writ of execution and remove defendant from the property. Defendant opened the door to the residence slightly but refused to allow the deputies inside, asserting that the writ of execution was illegal. Pownall forced the door open, stepped into the entryway, and informed defendant that the judgment was being executed. Defendant responded that he was not going to leave, held out his hands, and demanded to be arrested. Pownall refused defendant's request, took defendant by the shoulders, and escorted him out of the house. The deputies told defendant that he was not to return and that returning to the premises would constitute a criminal trespass.

Defendant immediately returned to the front porch and attempted to enter the residence. Finn put his hand on defendant's chest to prevent defendant from entering and told defendant that he would be arrested if he went further. Defendant knocked Finn's hand away, argued that the deputies did not have authority to evict him, and told Finn that he was going to go back inside. Finn warned defendant that he would be arrested if he tried to enter and that he would also be arrested if he touched Finn again. Defendant put out both of his hands, lightly shoved Finn, and demanded to be arrested. At that point, defendant was taken into custody. The deputies posted an "Eviction Trespass Notice" on the front and rear doors of the residence and posted three copies

of the writ of execution on the front door. Defendant was released from custody that same day.

Oregon City Police officer Kramer was on patrol that evening and, because he knew about the eviction, he decided to check on the property. Kramer observed that there was no longer any notice posted on the door. Kramer heard a noise inside the premises, entered, and found defendant in the bathroom. Kramer arrested defendant for criminal trespass. Defendant was subsequently charged with two counts of criminal trespass in the first degree, one count of harassment, and one count of obstructing governmental administration, ORS 162.235.

Before trial, the state filed a motion *in limine*, seeking to prohibit defendant from introducing any evidence tending to show that the legal proceedings resulting in defendant's eviction were fraudulent and unlawful. At the hearing on the state's motion, defendant argued that the evidence was relevant and admissible with regard to whether defendant acted with the requisite mental-state element in the charged offenses. The trial court rejected defendant's argument and granted the state's motion. In an offer of proof at trial, defendant introduced two exhibits: a copy of an *Oregonian* article from June 30, 2011, which, according to defendant, was about an unrelated foreclosure case in which a Columbia County Circuit Court had dismissed an eviction action; and a letter from defendant's civil attorney that outlined the attorney's arguments regarding related problems with the foreclosure and FED proceedings in defendant's case.

At trial, defendant was permitted to testify that he believed that he still owned the property, that an eviction could not occur without the physical presence of the mortgagee, that he had not seen any notices posted on the premises, and that no notices were posted when he returned to the residence that evening after his release from the county jail.

At the conclusion of the state's case, the trial court granted defendant's motion for judgment of acquittal on the obstruction charge and the trespassing charge that was based on defendant's reentry into the premises in the

deputies' presence. A jury found defendant guilty of the remaining trespass charge (relating to defendant's entry into the residence that night) and the harassment charge. On appeal, defendant renews his argument that the evidence supporting his belief that the legal process resulting in defendant's eviction from the property was fraudulent and illegal was relevant and admissible regarding his mental state as alleged in the remaining criminal trespass charge and the harassment charge.[1]

Criminal trespass in the first degree is defined in ORS 164.255, which provides that "[a] person commits the crime of criminal trespass in the first degree if the person *** "enters or remains unlawfully in a dwelling[.]" The state alleged that defendant "knowingly" entered or remained unlawfully in the foreclosed home, a dwelling.[2] With regard to trespass on private premises, the phrase "'[e]nter or remain unlawfully'" is defined as entering or remaining "in or upon premises when the premises, at the time of such entry or remaining, are not open to the public or when the entrant is not otherwise licensed or privileged to do so[.]" ORS 164.205(3)(a). At trial, defendant did not contest that he entered or remained in the house after being evicted and informed by the deputies not to return to the property. Nor does he do so on appeal. Rather, as described earlier, defendant argues that the excluded evidence is relevant with regard to whether he acted *knowingly* when he entered and remained in the foreclosed residence.

Defendant is correct that, when the state alleges that a defendant acted "knowingly," the state must prove not only that the entry was not licensed or privileged in fact, but

---

[1] Defendant argues that his relevance argument regarding the mental state alleged in the criminal trespass charge is equally applicable to the harassment charge. We reject defendant's argument regarding the harassment charge for the same reasons that we explain regarding the criminal trespass charge.

[2] ORS 164.255 does not specify a culpable mental state for criminal trespass in the first degree. However, ORS 161.115(2) provides that crimes within the criminal code require a culpable mental state. Consequently, "a person commits the crime of criminal trespass in the first degree if he 'intentionally, knowingly, recklessly or with criminal negligence' 'enters or remains unlawfully in a dwelling.'" *State v. Fitch*, 23 Or App 487, 489-90, 543 P2d 20 (1975). Here, the state alleged that defendant acted "knowingly." Accordingly, the state had the burden to prove that defendant knowingly entered or remained unlawfully.

also that the defendant was aware of that fact. The Supreme Court addressed that issue in *State v. Hartfield*, 290 Or 583, 624 P2d 588 (1981). *Hartfield* involved a defendant who had been invited to enter premises not open to the public by a person who was not authorized to extend that invitation. The Supreme Court held that, in order for the state to establish that the entry was not otherwise licensed or privileged, "[t]he state must prove that the person extending the permission or invitation was without actual authority to do so and that the entrant knew or believed there was no such actual authority." *Id.* at 595.

Defendant is also correct that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401. According to defendant, the newspaper article and his civil attorney's opinion that the legal proceedings resulting in his eviction were unlawful would have tended to show that his belief that he was licensed or privileged to be in the residence was a reasonable one. In response, the state first argues that the excluded evidence is too speculative and is not relevant to serve as a reasonable basis for defendant's belief that he was licensed or privileged to enter or remain in the house. We need not resolve that dispute, because, as the state also contends, in order for evidence regarding the lawfulness of the foreclosure and FED proceedings to be relevant, that evidence must also be "of consequence to the determination of the action." OEC 401.

Here, the legal proceedings resulting in the eviction order were final, establishing that defendant was not licensed or privileged to enter the premises.[3] Under the

---

[3] In *State ex rel Mix v. Newland*, 277 Or 191, 200, 560 P2d 255 (1977), the Oregon Supreme Court explained the general rule that a defendant charged with disobeying a court order may not collaterally attack the underlying validity of that order in a subsequent criminal proceeding:

"The integrity of the judicial process demands compliance with court orders until such time as they are altered by orderly appellate review. Litigants are not entitled to sit in judgment on their own cases, and they must follow the appropriate channels for review of decisions they believe to be invalid. Unless and until an invalid order is set aside, it must be obeyed. Only when there has been no other opportunity to raise the issue can the validity of the underlying order be litigated in a subsequent contempt proceeding."

circumstances, evidence supporting defendant's belief that those proceedings were somehow illegal or invalid was of no consequence regarding the legality of defendant's entry or whether defendant was aware of the fact that his entry was not otherwise licensed or privileged. Accordingly, the evidence was not relevant and the trial court correctly excluded it.

Affirmed.

---

*See also State v. Marbet*, 32 Or App 67, 75, 573 P2d 736 (1978) ("It is no defense to this [trespass] charge that the hearings officer's ruling denying him the right to participate [in a hearing] may have been in error.").

There are exceptions to the "no collateral attack" rule described in *Mix*. For example, the rule does not apply where the underlying order is void for lack of jurisdiction, *Mix*, 277 Or at 199, or when an exclusion order is limited or circumscribed by statutory or constitutional provisions. *Marbet*, 32 Or App at 75. Defendant does not argue that any such exception applies in this case.