Argued and submitted December 17, 2015, affirmed August 16, 2017

CERTAIN UNDERWRITERS AT LLOYD'S LONDON
and EXCESS INSURANCE COMPANY, LIMITED,
*Plaintiffs-Appellants,*

*v.*

MASSACHUSETTS BONDING AND
INSURANCE COMPANY,
succeeded in interest by
Hanover Insurance Company, et al.,
*Defendants,*

*and*

BENEFICIAL FIRE AND CASUALTY
INSURANCE COMPANY,
succeeded in interest by
JC Penney Life Insurance Company,
then succeeded in interest by
Stonebridge Life Insurance Company,
a Vermont corporation;
Industrial Indemnity Company,
succeeded in interest by
United States Fire Insurance Company,
a New York corporation;
Glens Falls Insurance Company,
a Delaware corporation,
dba CNA Insurance Companies; and
Continental Insurance Company,
a New Hampshire corporation,
dba CNA Insurance Companies,
*Defendants-Respondents.*

Multnomah County Circuit Court
030403995; A156649

401 P3d 1212

Michael B. King, Washington, argued the cause for appellants. With him on the opening brief were Linda B. Clapham, Jeffrey D. Laveson, and Carney Badley Spellman, PS. With him on the reply brief were Linda B. Clapham and Carney Badley Spellman, PS.

Christopher T. Carson argued the cause for respondent Beneficial Fire and Casualty Insurance Company. With him on the brief were Kilmer, Voorhees & Laurick, P.C.; Eliot R. Hudson, California, and DLA Piper LLP.

Thomas M. Christ argued the cause for respondent Industrial Indemnity Company. With him on the brief were Cosgrave Vergeer Kester LLP; Richard A. Lee and Bodyfelt Mount.

Andrew S. Moses, Diane L. Polscer, and Gordon & Polscer, L.L.C., filed the brief for respondents Glens Falls Insurance Company and Continental Insurance Company.

Before DeVore, Presiding Judge, and DeHoog, Judge, and Sercombe, Senior Judge.*

---

\* DeHoog, J., *vice* Nakamoto, J. pro tempore.

**SERCOMBE, S. J.**

This is the second time this case, an action for contribution between insurance companies, has been before us. *See Certain Underwriters v. Mass. Bonding and Ins. Co.*, 235 Or App 99, 230 P3d 103, *rev den*, 349 Or 173 (2010), *adh'd to as modified on recons*, 245 Or App 101, 260 P3d 830 (2011). The issue presented in this case is whether plaintiffs Certain Underwriters at Lloyd's London and Excess Insurance Company, Limited (collectively, London) can maintain their contribution action against defendants in light of the 2013 amendments to the Oregon Environmental Cleanup Assistance Act (OECAA), ORS 465.475 to 465.484. *See* Or Laws 2013, ch 350, §§ 4, 8.[1] Under the OECAA, the contribution action is precluded unless the underlying environmental claim or claims[2] for which London sought contribution had, "before the effective date of th[e] 2013 Act" become subject to a "final judgment, after exhaustion of all appeals." Or Laws 2013, ch 350, § 8(2). The trial court concluded that no such judgment had been entered before the effective date of the 2013 amendments and, accordingly, London's contribution rights against defendants were extinguished. London appeals the resulting judgment dismissing this action, contending that the trial court erred. We affirm.

London and defendants are companies that issued insurance policies to a common insured, Zidell.[3] After Zidell, which operated a scrap metal business along the Willamette River, became the subject of a Department of Environmental Quality (DEQ) environmental cleanup action, it sought coverage from its insurers, including London and defendants and, in 1997, filed claims against them "seeking a declaration of coverage relating to the cleanup action, as well as reimbursement for defense and indemnity costs already

---

[1] The amendments to the OECAA were enacted in Senate Bill (SB) 814 (2013).

[2] Pursuant to ORS 465.475(1), an "environmental claim" is defined as "a claim for defense or immunity submitted under a general liability insurance policy by an insured facing, or allegedly facing, potential liability for bodily injury or property damage arising from a release of pollutants onto or into land, air or water."

[3] As we have explained, "[m]ore accurately, the parties insured a number of related entities, including ZRZ Realty Co. and others." *Certain Underwriters*, 235 Or App at 102 n 1. We refer to those entities collectively as Zidell.

incurred." *Certain Underwriters*, 235 Or App at 102. We refer to that underlying coverage action as the *"Moody Avenue"* action. Between 1997 and April 2003, when the trial court entered its judgment, defendants settled with Zidell and were dismissed from the case. As we explained in *Certain Underwriters*:

> "Defendants Beneficial Fire, National Union, and Industrial Indemnity Company (U.S. Fire) were among those who settled first, which left defendants Glen Falls and Continental Insurance Company (collectively CNA), defendant Century Indemnity Company (CIGNA), and [London] as the only remaining insurers in the coverage case.
>
> "In October 1999, the *Moody Avenue* court ruled on a series of summary judgment motions filed by Zidell and the remaining insurers. The court ruled that 'the duty to defendant is a joint and several obligation, which will be allocated among the Defendant Insurers. Allocation should not be any hindrance to the duty to defend.' The court further ordered that 'the Defendant Insurers'—at that time, CNA, CIGNA, and [London]—were to 'make payment of past defense costs submitted by [Zidell] to date' and that, 'with respect to ongoing defense costs,' the parties were to put in place a 'reasonable system for submission, review and payment of these costs.'
>
> "The remaining insurers paid Zidell's accrued defense costs—approximately $771,000—as ordered. Of that amount, [London] paid approximately $578,000, and CNA and CIGNA paid the rest. The payments were made by [London] with the understanding that they were 'subject to a full reservation of each insurer's rights.'
>
> "After the start of trial in the *Moody Avenue* action, CNA settled out. The settlement then left [London] and CIGNA as the only insurers subject to the court's order to pay Zidell's remaining defense costs. Together, [London] and CIGNA paid another $619,982 in defense costs, with [London] again paying the lion's share—approximately $566,000. Then, after trial but while the court was still preparing its findings of fact and conclusions of law, CIGNA settled with Zidell."

235 Or App at 103-04. It is undisputed that all settlements were made in good faith.

London, however, did not settle and, instead, proceeded to trial. After a bench trial, in April 2003, the trial court entered a judgment against London and in favor of Zidell. With respect to defense costs, the judgment provided, in part, that London was liable to pay Zidell's costs of defense in connection with the environmental cleanup action. The judgment also stated that London,

> "together with dismissed defendants CNA and CIGNA (who shared the joint and several obligation to pay Zidell's defense costs prior to their dismissal from this case), have satisfied their obligation for defense costs of $1,390,658.65 incurred by Zidell through August 31, 2001, with respect to the DEQ Action and the prejudgment interest of $37,768.35 thereon."

Thus, according to the judgment, London was "now responsible only for defense costs submitted by Zidell subsequent to August 31, 2001." With respect to London's "indemnity obligations (*i.e.*, the costs of remediation as a result of the [the environmental cleanup] claims rather than defending against them or investigating them), the *Moody Avenue* judgment incorporated the trial court's earlier findings of fact and conclusions of law, which allocated indemnity costs to particular policies." *Certain Underwriters*, 235 Or App at 104. The court also awarded Zidell its attorney fees.

The parties appealed the trial court's judgment. *See ZRZ Realty v. Beneficial Fire and Casualty Ins.*, 222 Or App 453, 194 P3d 167 (2008) (*ZRZ I*), *adh'd to as modified on recons*, 225 Or App 257, 201 P3d 912 (2009) (*ZRZ II*), *aff'd in part and rev'd in part*, 349 Or 117, 241 P3d 710 (2010) (*ZRZ III*), *adh'd to as modified on recons*, 349 Or 657, 249 P3d 111 (2011) (*ZRZ IV*). On appeal, we reversed and remanded for a new trial, concluding, in part, that the trial court had incorrectly allocated the burden of proof to London on certain issues. *ZRZ I*, 222 Or App at 476-77. On reconsideration, we modified our opinion and adhered to it as modified; we did not change the disposition of the case. *ZRZ II*, 225 Or App at 265. Thereafter, the Supreme Court granted review and, on review, it affirmed in part and reversed in part our decision and remanded the case to us for resolution of issues we had deemed it unnecessary to address in *ZRZ I*. *ZRZ III*,

349 Or at 149-51. Then, on reconsideration, the Supreme Court clarified what proceedings the trial court might use on remand, stating that the court could take live testimony if, in its discretion, the court determined such testimony was appropriate. *ZRZ IV*, 349 Or at 662.

In 2013, on remand from the Supreme Court, we issued another opinion in the *Moody Avenue* action, deciding the assignments of error that we had not previously reached and, ultimately, reversing in part the trial court's judgment on appeal and cross-appeal, and remanding for further proceedings. *ZRZ Realty v. Beneficial Fire and Casualty Ins.*, 255 Or App 524, 300 P3d 1224 (*ZRZ V*), *adh'd to as clarified on recons*, 257 Or App 180, 306 P3d 661 (*ZRZ VI*), *rev den*, 354 Or 491 (2013). On reconsideration, we clarified our opinion in *ZRZ V*, and adhered to the disposition of the case. *ZRZ VI*, 257 Or App 180. In November 2013, the Supreme Court denied review, and, finally, in February 2014, the appellate judgment was issued remanding the case to the trial court.

Meanwhile, in 2003, after the trial court had entered its judgment in the *Moody Avenue* action, London filed this contribution action against defendants. London alleged that the duty to defend Zidell from an environmental cleanup action was an obligation owed by London and defendants jointly. London alleged that it had paid a disproportionate share of that common obligation and was entitled to pro rata contributions from defendants, the settling insurers. *Certain Underwriters*, 235 Or App at 102. London also asserted that it "had been held liable for attorney fees * * * as well as prejudgment interest on the unpaid defense costs, for which defendants would have been liable had they not settled with Zidell before the *Moody Avenue* judgment was entered." *Id.* at 105. Defendants sought summary judgment on a number of grounds, including that their settlements with Zidell had extinguished any common liability for purposes of a contribution claim. The trial court granted summary judgment and, on appeal, London argued, in part, that "the trial court erred in concluding that defendants' settlements with Zidell foreclosed any subsequent contribution claims as a matter of law." *Id.* at 110. We agreed, explaining that

"defendants' settlements with Zidell did not operate to extinguish [London's] right to equitable contribution for defense costs paid prior to the settlement. If [London] and defendants had the same obligation to defend Zidell, and [London] discharged a disproportionate share of that obligation, then [London's] right to equitable contribution arises at that point in time. Although Zidell was able to release its own claims against defendants for defense costs, Zidell was not in a position to release [London's] claims against defendants."

*Id.* at 113 (footnote and emphasis omitted).[4]

We also addressed the question, raised in a cross-assignment of error, whether 2003 amendments to the OECAA "retroactively extinguished" London's contribution claims. *Id.* at 123. The contention that the contribution claims were extinguished by statute was

"premised on ORS 465.480(4), a provision of the OECAA that was enacted during the 2003 legislative session—after [London] filed [its] contribution claims. ORS 465.480(4) provides, in part, that '[a]n insurer that has paid an environmental claim may seek contribution from any other insurer that *is liable or potentially liable.*' (Emphasis added.) [On cross-appeal, it was argued that], as a result of * * * settlement with Zidell, [an insurer] no longer 'is liable or potentially liable' for an environmental claim; hence, [London] cannot seek contribution from [the insurer] under the plain language of the statute."

*Id.* at 123 (third brackets in original). We were not persuaded that the legislature intended the phrase "is liable or potentially liable" to be understood as the insurer argued. We further observed that a different section of "the 2003 amendments expressly cut off contribution claims against insurers who 'reached a binding settlement with the insured as to the environmental claim.'" *Id.* at 129. However, that part of the 2003 amendments only cut off "contribution claims against settling insurers in a narrow window of cases—those in which a 'final judgment as to all insurers

---

[4] We expressed no opinion "regarding the effect, if any, that the settlement agreements had with respect to contribution liability for defense costs that Zidell incurred *after* the date of the settlements." *Certain Underwriters*, 235 Or App at 116 n 8 (emphasis in original).

has not been entered by the trial court on or before the effective date of this 2003 Act.'" *Id.* However, we observed, "a final judgment *had* been entered before the effective date, making" that section of the 2003 amendments inapplicable. *Id.* (emphasis in original). Having concluded, among other things, that the trial court erred in dismissing London's contribution claims, we reversed in part and remanded for further proceedings.[5]

In 2013, while this contribution case was back before the trial court and the *Moody Avenue* coverage case was pending in this court, the legislature amended the OECAA. In part, it amended ORS 465.480(4) to provide that "[a]n insurer that has paid all or part of an environmental claim may seek contribution from any other insurer that is liable or potentially liable to the insured *and that has not entered into a good-faith settlement with the insured regarding the environmental claim.*" Or Laws 2013, ch 350, § 4 (emphasis added); *see* ORS 465.480(4)(a).[6] Thus, the legislature amended the OECAA to allow a contribution action *only* against another insurer that has not settled the environmental claim with the insured in good faith. Furthermore, under the 2013 amendments, "[c]ontribution rights by and among insurers under this section preempt all common law contribution rights, if any, by and between insurers for environmental claims." Or Laws 2013, ch 350, § 4; *see* ORS 465.480(4)(d). Those amendments apply to "all environmental claims, whether arising before, on or after the effective date of this 2013 Act[;]" however, the amendments do "not apply to any environmental claim for which a final judgment, after exhaustion of all appeals, was entered before the effective date of this 2013 Act." Or Laws 2013, ch 350, § 8(1)-(2).

---

[5] On reconsideration, we were asked to address an assignment of error that we had initially declined to reach. 245 Or App at 104. We allowed the petition, addressed and rejected that assignment of error, and modified our opinion accordingly. *Id.*

[6] The legislature also amended ORS 465.480(4) to provide that

"[t]here is a rebuttable presumption that all binding settlement agreements entered into between an insured and an insurer are good-faith settlements. A settlement agreement between an insured and insurer that has been approved by a court of competent jurisdiction after 30 days' notice to other insurers is a good-faith settlement agreement with respect to all such insurers to whom such notice was provided."

Or Laws 2013, ch 350, § 4; *see* ORS 465.480(4)(b).

Based on the 2013 amendments, defendants sought dismissal of London's contribution action. The trial court determined that the 2013 amendments applied to London's claims: "Under Section 4 of SB 814, which amends ORS 465.480, an insurer may not seek equitable contribution against another insurer where the insurer has entered into a good faith settlement agreement regarding an environmental claim." Furthermore, "Section 8 of SB 814 contains a retroactivity clause, which provides that the amendments apply to 'all environmental claims,' regardless of when they arose. The only exception is for 'environmental claims for which a final judgment, after exhaustion of all appeals, was entered before the effective date' of the amendments." According to the trial court, "[i]n this case, the environmental claim at issue is the underlying *Moody Avenue* action. As defendant explains in its briefing, there has not yet been a final judgment in that case[.]" Furthermore, in the court's view, the legislative history supported its understanding:

> "[T]he purpose of SB 814 was to facilitate speedy cleanup of hazardous waste sites by encouraging good faith settlements and precluding lengthy contribution claims from non-settling insurers. The *Moody Avenue* case was cited more than once as an example of a 'pending' or 'ongoing' case in which insurance companies denied coverage and thereby slowed down the clean up process. It is as though the legislature enacted these amendments to specifically address this case."

(Internal citations omitted.) The parties stipulated that defendants had settled with Zidell in good faith. Thus, based on the application of then-newly amended ORS 465.480, the court dismissed London's contribution case with prejudice.

As noted, on appeal from the trial court's judgment, the sole issue in this case is whether the 2013 amendments to the OECAA apply to London's contribution claim. It is undisputed that if they do apply, the amendments extinguish London's contribution rights.

London contends that the 2013 amendments did not abrogate its contribution rights. In London's view, the *Moody Avenue* action itself is not a single environmental claim; instead, the *Moody Avenue* action involves two

environmental claims—one for defense, and one for indemnity. London argues that there was a final judgment on "Zidell's environmental claim for defense" in 2003 and, "[w]hile London appealed other issues, it did not challenge the trial court's decision on Zidell's environmental claim for defense costs." Thus, in London's view, there was a "final judgment, after exhaustion of all appeals" on the relevant environmental claim before the effective date of the 2013 amendments. London also asserts that allowing it to maintain its contribution action is consistent with the purpose underlying the 2013 amendments to the OECAA.

Defendants make a number of arguments in response. In part, they assert that "the 'environmental claim' for which London seeks contribution is the claim by Zidell in the *Moody Avenue* action" and that London is incorrect in asserting, as a legal matter, that the *Moody Avenue* action contains two environmental claims. In defendants' view, the statutes make clear that "a single 'environmental claim' can allege breach of defense-related duties, breach of indemnity related duties, or, as in Zidell's case, breach of defense- *and* indemnity-related duties." (Emphasis in original.) In the end, however, in defendants' view, "it doesn't matter whether the *Moody Avenue* case is one 'environmental claim' or two." They explain that,

> "[h]owever many claims there might be in the *Moody Avenue* case, and whatever London and Zidell might have argued on appeal, there was only one judgment in that case and that judgment was under appeal on the effective date of the 2013 law. It doesn't matter, then, whether there were two 'environmental claims,' one for defense, the other for indemnity, or just one such claim, with defense and indemnity components. Nor does it matter whether London and Zidell argued about defense-cost issues on appeal. If there were two environmental claims, then the 2003 judgment was a judgment on *both* of them. And if there was just one environmental claim, then the 2003 judgment was a judgment on *that* claim. Either way, and no matter what the parties argued on appeal, there was still only one judgment, and that judgment was still on appeal when the 2013 law took effect."

(Emphases in original.)

We agree with defendants that, regardless of whether the *Moody Avenue* action is viewed as being a single environmental claim, or consisting of two such claims, there was no "final judgment, after exhaustion of all appeals" before the effective date of the 2013 amendments. In 2003, when the parties in the *Moody Avenue* action appealed the trial court's judgment, as now, an appeal was taken from the entirety of a judgment (or an appealable order) or "some specified part of the judgment." *See* ORS 19.250(1)(d) (2001). The 2003 notice of appeal of the *Moody Avenue* action specified that the appeal was taken from the entire judgment. And, in determining whether there has been a final judgment after exhaustion of all appeals, it is not appropriate to examine the arguments raised on appeal to determine whether particular issues or claims were raised before the appellate court. As we have explained, generally, "as long as appeal is pending, finality does not attach piecemeal to the parts of a judgment or order that are not placed in direct controversy by the parties' assignments or arguments in the appeal; it attaches to the case as a whole after the appellate process is complete." *Liberty Northwest Ins. Corp. v. Koitzsch,* 155 Or App 494, 500, 964 P2d 1071 (1998); *see also Certain Underwriters,* 235 Or App at 108 n 2 (questioning whether a party could demonstrate "finality" for purposes of issue preclusion in light of the "fact that the *Moody Avenue* judgment was on appeal"). Here, because an appeal from Zidell's environmental claims judgment in the *Moody Avenue* action was pending at the time that the 2013 amendments became effective, there was no "final judgment, after exhaustion of all appeals" for any environmental claim in that case. Or Laws 2013, ch 350, § 8.[7]

Our discussion in *Certain Underwriters* is consistent with that conclusion. As noted, in that case, we discussed the 2003 amendments to the OECAA, which cut "off contribution claims against settling insurers in a narrow window of cases"—those in which a binding settlement had been reached on or before the effective date of the 2003 Act

---

[7] Indeed, as defendants correctly point out, the 2003 judgment in the *Moody Avenue* action was reversed, in part, on appeal and cross-appeal and the case remanded for further proceedings. Thus, "[e]ven now, there is no final judgment after all appeals."

but in which "'a final judgment as to all insurers has not been entered by the trial court on or before the effective date of this 2003 Act.'" 235 Or App at 129 (quoting Or Laws 2003, ch 799, § 5(4)(b)).[8] We noted that, because the trial court had entered a final judgment before the effective date, the 2003 amendment cutting off contribution claims against settling insurers was inapplicable. *Id.* That observation was based on the specific text of the 2003 amendments, which focused only on a final judgment by the trial court, irrespective of appeals. That particular text, of course, was changed by the 2013 amendments that are at issue here. The legislature retained the provision precluding an insurer who has paid an environmental claim from seeking contribution from another insurer who has entered into a good faith settlement agreement with the insured regarding certain environmental claims; the 2013 amendments extended that provision barring contribution claims against insurers who settled in good faith, to all settled environmental claims, whenever they arose, unless they were already subject to a final judgment after exhaustion of all appeals by June 10, 2013. *See* Or Laws 2013, ch 350, § 9. In light of the text of the 2013 amendments, the issue, unlike under the 2003 amendments, is not whether a *trial court* had entered a final judgment as to all insurers but is, instead, whether, as of the effective date of the 2013 amendments, there had been a final judgment *after exhaustion of all appeals*. Because the judgment in the *Moody Avenue* action was still on appeal as of that date, the 2013 amendments apply in this case.

We have reviewed the legislative history of the 2013 amendments, *see State v. Gaines*, 346 Or 160, 171-72, 206

---

[8] Under Oregon Laws 2003, chapter 799, section 5(4),

"[n]otwithstanding any other provision of law, an insurer that is a party to an action based on an environmental claim for which a final judgment as to all insurers has not been entered by the trial court on or before the effective date of this 2003 Act and in which a binding settlement has been reached on or before the effective date of this 2003 Act between the insured and at least one insurer that was a party to the action may not seek or obtain contribution from or allocation to:

"(a) The insured; or

"(b) Any other insurer that prior to the effective date of this 2003 Act reached a binding settlement with the insured as to the environmental claim."

P3d 1042 (2009), and that history is consistent with our conclusion in this case. Based on our review of that legislative history, we concur with the trial court that "the purpose of [the 2013 amendments] was to facilitate speedy cleanup of hazardous waste sites by encouraging good faith settlements and precluding lengthy contributions claims for non-settling insurers." As the trial court correctly observed, the *Moody Avenue* action was cited numerous times in the legislative history "as an example of a 'pending' or 'ongoing' case in which insurance companies denied coverage and thereby slowed down the clean up process. * * * It is as though the legislature enacted these amendments to specifically address this case." *See, e.g.*, Testimony, Senate Committee on General Government, Consumer and Business Protection, SB 814, Mar 22, 2013, Ex 1 (statement of Joan Snyder, counsel to Schnitzer Steel); Testimony, House Committee on Consumer Protection and Government Efficiency, SB 814, May 9, 2013, Ex 10 (statement of Kathryn Silva, General Counsel to Zidell Companies); Testimony, House Committee on Consumer Protection and Government Efficiency, SB 814, May 9, 2013, Ex 1 (statement of Joan Snyder, counsel to Schnitzer Steel).

In sum, we conclude that the trial court correctly held that the 2013 amendments to the OECAA apply to London's contribution action. Accordingly, it did not err in dismissing this case.

Affirmed.