38 February 22, 2024 No. 110

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

CONTINENTAL CASUALTY COMPANY
and Transportation Insurance Company,
*Plaintiff-Respondents,*

*v.*

ARGONAUT INSURANCE COMPANY et al.,
*Defendants,*
*and*

INSURANCE COMPANY OF THE
STATE OF PENNSYLVANIA,
*Defendant-Respondent,*
*and*

EMPLOYERS INSURANCE COMPANY OF WAUSAU,
*Defendant-Appellant.*

INSURANCE COMPANY OF NORTH AMERICA,
*Third-Party Plaintiff,*

*v.*

ARGONAUT INSURANCE COMPANY et al.,
*Third-Party Defendants.*

Multnomah County Circuit Court
16CV14319; A176763

David F. Rees, Judge.

Argued and submitted October 10, 2023.

David C. Linder, Minnesota, argued the cause for appellant. Also on the briefs were Larson King LLP, Minnesota, and Thomas W. Sondag, Carter M. Mann, and Lane Powell PC.

William C. Perdue, Washington, D. C., argued the cause for respondent Insurance Company of the State of Pennsylvania. Also on the brief were Robert Reeves Anderson, Colorado, Timothy R. Macdonald, Samuel I. Ferenc, and Arnold & Porter Kaye Scholer LLP, Washington, D. C., and Thomas W. Brown, Julie A. Smith, and Cosgrave Vergeer Kestler LLP and Stephen R. Wong, Kenneth H. Summer, and Sinnott, Puebla, Campagne & Curet APLC, California.

Laurie J. Helper, California, argued the cause for respondents Continental Casualty Company and Transportation Insurance Company. Also on the brief were Rachel A. Beyda and Greines Martin Stein & Richland LLP, California, and Lawrence Gottlieb, Jeremy Schultze, H. Matthew Munson, and Betts, Patterson & Mines, P.S., Washington.

Louis A. Ferreira, Cameron Zangenehzadeh, and Stoel Rives LLP, filed the brief *amicus curiae* for Schnitzer Steel Industries, Inc., and MMGL, LLC.

Before Egan, Presiding Judge, and Kamins, Judge, and DeVore, Senior Judge.

EGAN, P. J.

Reversed and remanded.

Kamins, J., dissenting.

**EGAN, P. J.**

In this contribution action under ORS 465.480(4) arising in the context of the Portland Harbor Superfund Site cleanup, defendant Employers Insurance Company of Wausau (Wausau) appeals from a judgment for plaintiffs Continental Casualty Company and Transportation Insurance Company (collectively, Continental) holding that Continental is entitled to contribution from Wausau for defense costs Continental incurred in defending its insureds, Schnitzer Steel Industries, Inc. (SSI), and MMGL Corp (formerly Schnitzer Investment Corp) (SIC) (collectively "Insureds"), against claims for environmental cleanup of the Portland harbor. We conclude that the trial court erred and therefore reverse and remand.

*Background*: The Insureds engaged in industrial activities (including ship dismantling and scrap-metal recycling) on properties they owned on the banks of the Willamette River. In 2000, the Insureds were notified by the federal Environmental Protection Agency (EPA) that they had been identified as parties potentially responsible under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA) for cleanup of pollution at the Portland Harbor Superfund Site, as a result of their activities and the activities of their tenants on the properties they owned or had owned that had resulted in the release of contaminants into the river.

*The Insureds' insurance*: During the relevant period, from 1937 to the present, the Insureds had comprehensive general liability insurance policies, and they tendered defense and sought coverage of their potential liability from their multiple insurers:

- Wausau—appellant here—had issued two comprehensive general liability policies to the Insureds during the relevant period, from 1965 to 1970, with policy limits of $100,000, and had issued 10 policies of insurance to tenants of the Insureds from 1977 to 1985, under which SIC was named as an additional insured. Wausau denied coverage under the policies issued directly to the Insureds but agreed

to defend the Insureds with regard to the policies it had issued to the Insureds' tenants, with a reservation of rights to dispute its duty to indemnify the Insureds for the costs of actual cleanup.

- El Dorado Insurance Company had issued seven policies to the Insureds during the relevant period, from 1970 to 1977, with policy limits of $100,000 and $250,000. El Dorado ceases to exist.

- Continental—respondent on appeal—had issued seven policies to the Insureds during the relevant period, from 1977 to 1983, with limits of $500,000. Continental agreed to defend the Insureds, under a reservation of rights to withdraw from the defense in the event of any determination that the Insureds' potential liability on the claims was subject to a coverage exclusion or in the event the coverage limits of Continental's policies were exhausted by indemnity payments.

- Insurance Company of North America (now known as Century Indemnity Company (Century)) had issued a single policy to the Insureds during the relevant period, 1983 to 1984, with limits of $500,000. Century, like Continental, agreed to defend, under a reservation of rights to withdraw from the defense in the event of a determination that the Insureds' potential liability on the claims was subject to a coverage exclusion or in the event the coverage limits of Century's policy was exhausted by indemnity payments, among other reservations.

- Argonaut, which has settled with the Insureds and is not involved in any appeal, had issued policies to the Insureds during the relevant period.

The Insureds also had "umbrella" policies with Insurance Company of the State of Pennsylvania (ICSOP), which provided excess coverage with limits of $5,000,000, to five underlying primary insurance policies. ICSOP denied the Insureds' claim, contending that, based on policy provisions, the excess liability policies had not been triggered.

Insurers Continental, Wausau, and Century, each of whom had agreed to defend the Insureds under a reservation of rights, subsequently entered into a cost-sharing agreement, under which Continental would pay 70 percent of the Insureds' defense costs, Wausau would pay 20 percent, and Century would pay the remaining 10 percent. Continental, Wausau, and Century began paying a portion of the Insureds' defense costs beginning in 2001 but did not fully reimburse the Insureds for legal fees incurred that they asserted were excessive.

*The attorney fee dispute*: In 2003, the Insureds' legal counsel at Stoel Rives developed a conflict of interest that prevented the firm from continuing to represent the Insureds. Having the view that there were no nonconflicted Portland attorneys available with the necessary expertise to represent them, the Insureds retained Jim Dragna, of the Los Angeles firm Bingham McCutchen, to represent them in the Portland Harbor litigation. Bingham McCutchen's billing rate was 40 percent higher than rates charged by Portland firms identified by Continental. But Continental and the other insurers ultimately agreed that the Insureds could retain Bingham McCutchen. They agreed, however, to reimburse the Insureds only at the rate charged by Portland firms.

*The Oregon Environmental Cleanup Assistance Act (OECAA)*: In 1999, finding that the state has a substantial public interest to "promot[e] the fair and efficient resolution of environmental claims while encouraging voluntary compliance and regulatory cooperation," ORS 465.478, the Legislative Assembly adopted the Oregon Environmental Cleanup Assistance Act (OECAA), ORS 465.475 to 465.485. ORS 465.475(1) defines an "environmental claim" as

> "a claim for defense or indemnity submitted under a general liability insurance policy by an insured facing, or allegedly facing, potential liability for bodily injury or property damage arising from a release of pollutants onto or into land, air or water."

The Legislative Assembly recognized that often, multiple general liability insurers have insured a person potentially responsible for environmental cleanup. Under

ORS 465.480(3)(b), if an insured has made an environmental claim against multiple general liability insurance policies and the claim is not fully satisfied, the insured may choose to file suit against less than all the insurers.

*The Insureds' federal claim for breach of contract against Continental*: In 1999 and 2000, after they were identified by the Oregon Department of Environmental Quality and the EPA as potentially responsible parties for the Portland Harbor Superfund Site cleanup, the Insureds tendered claims for defense and indemnity to all of their insurers. As noted, Continental, Wausau, and Century had agreed to defend the Insureds, with reservations. And further as noted, the insurers had been sharing defense costs but had declined to pay the full amount of the Insureds' defense-related attorney fees from Bingham McCutchen.

In 2010, having been unable to resolve their disagreement with the insurers over reimbursement for attorney fees, the Insureds brought a claim in the federal district court for breach of contract (the federal action) against Continental, seeking reimbursement from Continental of all defense-related legal costs previously paid by the Insureds on their potential liability for Portland Harbor cleanup as well as a declaration that Continental is responsible for future defense costs. The primary issue in the federal action was the determination of recoverable legal fees incurred by the Insureds as part of defense costs. The case went to trial in 2014.

The federal court determined that Continental had a duty to defend the entire action. And a federal jury agreed with the Insureds that no competent nonconflicted Portland legal counsel was available to represent the Insureds in the Portland Harbor litigation, and that no competent nonlocal counsel would work for Portland legal fees. The jury also found that the legal fees charged by Bingham McCutchen were reasonable under the circumstances and rejected other arguments that Continental offered in support of deductions it had made in reimbursing the Insureds. The jury awarded to the Insureds (and Continental satisfied) all of the Insureds' unpaid legal defense costs to date—$8,601,700.

The federal court also awarded to the Insureds (and Continental paid) $2,812,185 in prejudgment interest under ORS 82.010, and $3,756,037 in attorney fees under ORS 742.061 (providing for attorney fees for an insurer's failure to settle or pay within six months of a proof of claim against).

Under the declaratory judgment portion of the judgment, the court ordered Continental to pay the Insureds' reasonable and necessary defense costs at the rates charged by Bingham McCutchen for all past and future defense costs, until such time as Continental's limits are exhausted by indemnity payments. Continental's total defense cost liability is estimated to be $23.3 million, including prejudgment interest and attorney fees recovered from Continental by the Insured in the federal action. The Ninth Circuit Court of Appeals upheld the federal district court's judgment.

*Continental's contribution claim*: To offset the effects of allowing an insured to bring an action against only one or fewer than all of multiple potentially responsible insurers, the OECAA allows the targeted insurer(s) to seek contribution from other insurers. ORS 465.480(4)(a) (1999) provided that "[a]n insurer that has paid all or part of an environmental claim may seek contribution from any other insurer that is liable or potentially liable to the insured *** regarding the environmental claim." *See Allianz Global Risks v. ACE Property and Casualty*, 367 Or 711, 743, 483 P3d 1124, *adh'd to as modified on recons*, 368 Or 229, 489 P3d 115 (2021) (describing insurer's right to seek contribution from other "liable or potentially liable" insurers).

In 2013, while the federal action was pending, the Legislative Assembly amended ORS 465.480(4)(a) to add, among other provisions, a statement that the insurer's right to contribution extends only to "any other insurer *** that has not entered into a good faith settlement agreement with the insured regarding the environmental claim." Or Laws 2013, ch 350, § 4. In its current form, ORS 465.480(4) provides:

"(a)   An insurer that has paid all or part of an environmental claim may seek contribution from any other insurer that is liable or potentially liable to the insured and that

has not entered into a good-faith settlement agreement with the insured regarding the environmental claim.

"(b) There is a rebuttable presumption that all binding settlement agreements entered into between an insured and an insurer are good-faith settlements. A settlement agreement between an insured and insurer that has been approved by a court of competent jurisdiction after 30 days' notice to other insurers is a good-faith settlement agreement with respect to all such insurers to whom such notice was provided.

"(c) For purposes of ascertaining whether a right of contribution exists between insurers, an insurer that seeks to avoid or minimize payment of contribution may not assert a defense that the insurer is not liable or potentially liable because another insurer has fully satisfied the environmental claim of the insured and damages or coverage obligations are no longer owed to the insured.

"(d) Contribution rights by and among insurers under this section preempt all common law contribution rights, if any, by and between insurers for environmental claims."

The amendment's purpose based on legislative history was "to facilitate speedy cleanup of hazardous waste sites by encouraging good-faith settlements and precluding lengthy contribution claims from non-settling insurers." *Certain Underwriters v. Mass. Bonding and Ins. Co.*, 287 Or App 279, 291, 401 P3d 1212 (2017).

In 2016, Continental filed this proceeding against the Insureds' other insurers, Wausau, Century, Argonaut, and ICSOP, in the Oregon circuit court, seeking contribution for the costs that Continental had incurred and would incur in defense of the Insureds' potential liability for the Portland Harbor cleanup.

*Wausau's settlement of defense costs and coverage.* Under the federal judgment, Continental's prospective defense obligation lasts only until Continental's indemnity limits are fully exhausted. In May 2019, after entry of judgment in the federal action, and after Continental had filed its contribution claim in this proceeding, the Insureds entered into a settlement agreement with Wausau under which Wausau agreed to pay the Insureds $8.5 million in exchange for the

Insureds' release of Wausau from all past, present, and future insurance claims "of any kind arising out of the [Portland Harbor Superfund Site]." Although the settlement agreement did not explicitly allocate between defense costs and indemnity damages, Wausau and the Insureds agree that it was intended to cover Wausau's liability for unpaid defense costs as well as future defense and indemnity costs. As a condition precedent to its obligations to pay the agreed-upon amount, Wausau required court approval that the settlements were made in "good faith" and dismissal of Continental's contribution claims against it under ORS 465.480(4). Continental responded that it was entitled to contribution as to defense costs that had been or would be incurred by Continental.

*The trial court's rulings*: The trial court ordered that each of the named insurers must contribute.[1] Among its many rulings, the trial court rejected Wausau's motion to dismiss Continental's contribution claim against it based on Wausau's settlement with the Insureds.[2] In rejecting Wausau's motion, the trial court reasoned that, under ORS 465.480(4)(a), a purported settlement that would free an insurer from contribution from defense costs must be a settlement "regarding the environmental claim." The trial court reasoned that an environmental claim is one brought against a targeted insurer, as permitted by ORS 465.480, and that the Insureds' breach of contract claim in federal court seeking to establish Continental's duty to defend was *the* environmental claim. The court reasoned that, at the time of the Insureds' settlement with Wausau, the Insureds did not then possess a claim for defense costs on their policy against Wausau, because the Insureds' claim for all unpaid defense costs had been reduced to a judgment against Continental (until Continental's indemnity limits would be exhausted). The court explained:

> "I understand reasonable minds can disagree on my characterization of 'the environmental claim.' My characterization of 'the environmental claim' is a claim for defense costs

---

[1] ICSOP has filed a separate appeal from the trial court's determination that it had a duty to defend, which we have decided this date. 331 Or App 26, ___ P3d ___ (2024).

[2] Century had filed a similar motion, which the trial court also denied, and which is the subject of a separate appeal, Court of Appeals A176706.

at the Portland Harbor Superfund site. And currently and until Continental's policy is exhausted, Schnitzer does not possess a claim for it."

In effect, the trial court determined that, insofar as defense costs were concerned, the Insureds had nothing that they could settle. Whatever the Insureds' settlement with Wausau might have been, the trial court did not consider it to be one that, within the meaning ORS 465.480(4)(a), would provide a bar to contribution. The court explained that, in electing to bring its environmental claim against a single insurer—Continental—and in obtaining complete relief—a determination that Continental had "to pay 100%" of the Insureds' Portland Harbor defense costs "until Continental's policies are exhausted,"—the Insureds no longer had an environmental claim for defense costs; their environmental claim for defense costs was, effectively, exhausted as resolved by the federal judgment. Thus, the trial court explained, the Insureds' settlement with Wausau after that judgment was not within or "regarding" *the* environmental claim. Accordingly, the court concluded, Wausau's settlement did not shelter it from Continental's right to contribution.

Despite comments by the court that it did not see any showing that the Wausau settlement with the Insureds was not an arms'-length transaction or that Wausau lacked good faith, the trial court determined that a good faith determination was not dispositive. The court's judgment states:

"The court finds that the settlement does not lack good faith, however, it cannot bar contribution claims by [Continental] for defense costs they incurred for the Portland Harbor Superfund Site. Wausau's settlement does bar contribution claims for all other environmental claims released by the settlement."

Because Wausau's challenge to the trial court's denial of its motion to dismiss is dispositive of this appeal, we address that assignment now without further description of the trial court's thorough amended findings of fact and conclusions of law. In the first of five assignments of error, Wausau contends that the trial court erred in failing to dismiss Continental's contribution claim against Wausau for defense costs, for the reason that Continental's contribution

claim against Wausau is barred by ORS 465.480(4)(a), because Wausau entered into a good faith settlement with the Insureds. Wausau argues that the trial court erred in narrowly construing an "environmental claim" as only the Insureds' claim resulting in judgment against Continental, and further erred in failing to give effect to the evident purpose of the OECAA, as amended, to include a bar to contribution for good faith settlements. Those errors, Wausau argues, precluded the trial court from following through on its express finding that the settlement was in good faith. Specifically, Wausau disputes that the OECAA is correctly construed to provide that there may be only one "environmental claim." Wausau disputes the trial court's ruling that the Insureds did not possess a claim against Wausau for defense costs. Finally, Wausau asserts that the purpose of the amendment of ORS 465.480 to insert a bar to contribution as against settling insurers was to encourage insurers to settle rather than to hold out for a delayed and protracted determination of who pays and how much.

In support of the rulings below, Continental argues that the trial court rightly concluded that the insureds could not settle the "same claim" with Wausau as the Insureds' claim with Continental. Continental argues, as the trial court ruled, that the Insureds did not "possess" their policy claim against Wausau after the Insureds were awarded a judgment against Continental for defense costs. In Continental's view, the reason is "merger." Continental argues, quoting two Supreme Court opinions:

> "'Once a claim is reduced to a judgment, the claim is extinguished because it is 'merged' into judgment and rights upon the judgment are substituted for the former claim.' [*Barrett and Barrett*, 320 Or 372, 378, 886 P2d 1 (1994).] 'For that reason, the plaintiff can no longer maintain an action on the underlying claim.' [*State ex rel English v. Multnomah County*, 348 Or 417, 432, 238 P3d 980 (2010)]."

Next, Continental, like the trial court, asserts that an "environmental claim" can only mean the Insureds' claim against Continental, which has resulted in a judgment. Assuming that to be correct, Continental reasons that the Insureds' judgment against Continental "vested in Continental alone" the Insureds' claim against Wausau—to be realized in

contribution. Therefore, Continental contends, "it was not legally possible for [the insureds] to settle with Wausau."[3]

As noted, the trial court's primary rationale was that the Wausau settlement was not with regard to the Insureds' "environmental claim." That conclusion was based on the trial court's reasoning that the environmental claim was the federal action that the Insureds brought against Continental for defense costs. Once that claim was brought to final judgment, the trial court reasoned, the Insureds no longer had an environmental claim that could be settled.

We reject the trial court's narrow understanding of what constituted the "environmental claim." We find nothing in the OECAA that would require that, in a complex situation like this, there can only be one "environmental claim."

As noted, an "environmental claim" is defined in ORS 465.475(1) as "claim for defense or indemnity *submitted under a general liability insurance policy* by an insured facing, or allegedly facing, potential liability for bodily injury or property damage arising from a release of pollutants onto or into land, air or water." (Emphasis added.) Here, each of the Insureds' contract claims against their various liability insurers was an "environmental claim," whether resolved without dispute, disputed but settled, or litigated to judgment. The Insureds brought their *environmental claims*, seeking defense and indemnity, against all of their insurers; and as permitted by ORS 465.480, they brought their *breach of contract* claim for defense costs only against Continental. Nonetheless, the Insureds' settlement with Wausau was a settlement of an environmental claim.

We also reject Continental's argument that the Insureds did not "possess" a claim on their policy against Wausau, because their claim against Wausau had "merged" with the judgment against Continental. "Under the 'merger' doctrine, once a claim is reduced to a judgment, the claim is extinguished, because it is 'merged' into the judgment and rights upon the judgment are substituted for the former claim." *Barrett*, 320 Or at 378; *see State ex rel English*, 348

---

[3] Continental further contends in a cross-assignment of error that, in the event that we determine that Wausau is not subject to contribution, the judgment should be remanded for a reallocation of contribution.

Or at 434 ("[T]he county is prohibited, by the rule of merger, from raising any defenses in this mandamus proceeding that it could have raised, or that it raised and lost, in the original trial court proceeding."). But merger concerns the claims of parties to a proceeding; it does not implicate strangers to the proceeding. And we find no authority for the conclusion that the judgment against Continental caused the Insureds' independent contract claim against Wausau to merge in the judgment against Continental—a judgment to which Wausau was not a party. The Insureds possessed an environmental claim against Wausau based on their contract of insurance, which they could settle in good faith for indemnity damages or defense costs.

Finally, we agree with Wausau on the evident purpose of the OECAA to encourage earlier settlements and earlier remedial clean up. *Certain Underwriters*, 287 Or App at 291. We agree that the OECAA allows insureds to negotiate with individual insurers who, by settling, can resolve their risk sooner, reduce further litigation cost, and be involved in negotiating a finite sum. Continental's view defeats that purpose.

As noted, Wausau sought a determination from the trial court that its settlement was in good faith. The trial court said, "I am not finding that *** this is a settlement that lacks good faith." The court found, essentially, that it had no evidence on which to base a finding that the settlement was not in good faith. However, the court reasoned, essentially, that a good faith determination was superfluous, because the settlement was not regarding the environmental claim—that is, the federal action, and, for that reason, concluded that Continental was entitled to contribution from Wausau.

The trial court also reasoned that, under the statutes, it did not seem right (or fair) that Continental should have borne responsibility for the Insureds' full defense costs and not be permitted to seek contribution from insurers who settled *after* Continental made defense cost payments and *after* Continental sought contribution. The court inquired of the parties whether the statutes might be construed to provide a right to contribution with respect to defense costs

that were incurred before settlement. The parties discussed a construction of the statute that places a temporal limitation on the effect of settlement on the right to seek contribution. But the trial court ultimately rejected that construction, returning to the rationale that Wausau's settlement was not a settlement of the environmental claim. As we've explained, we reject that rationale. Wausau's settlement was a settlement of the environmental claim that the Insureds had against Wausau.

Continental was entitled to seek contribution "from any other insurer that is liable or potentially liable to the insured," except for an insurer that "has entered into a good-faith settlement agreement with the insured regarding the environmental claim." ORS 465.480(4)(a). Continental was precluded from seeking contribution from Wausau if Wausau's settlement was entered into in good faith. Continental asserted that its right to contribution attached upon payment of defense costs, and it makes no argument in its briefing that that bar to contribution is subject to a temporal restriction, such as, for example, a limitation to defense costs paid after the contribution claim is filed or after the settlement.[4] The trial court found that "the settlement does not lack good faith." That finding is, in our view, sufficient to satisfy ORS 465.480(4)(a). We conclude, therefore, that Continental was not entitled to seek contribution from Wausau and that the trial court erred in denying Wausau's motion to dismiss. We therefore reverse the judgment and remand for a redetermination of the allocation on Continental's claim for contribution to defense costs.

Reversed and remanded.

**KAMINS, J.,** dissenting.

Schnitzer Steel Industries, Inc. (SSI), as was its statutory right, selected Continental Casualty Company and Transportation Insurance Company (collectively, Continental) from its many insurance providers to bear

---

[4] As the dissent notes, although Continental did not make a temporal argument in its brief, it did address the issue during oral argument, in response to questions from the court. However, we conclude that a statutory construction argument has not been fully developed by parties, and we therefore decline to address whether the statute's text lends itself to the dissent's construction.

the costs of defense and cleanup stemming from its property on the Portland Harbor Superfund site. Continental, as was its statutory right, sought contribution from those many insurance providers, including Employers Insurance Company of Wausau (Wausau), to cover some of the tens of millions of dollars in defense costs it was incurring. After that contribution action had been filed and litigated for several years, SSI "settled" its environmental claim with one of the insurer defendants, Wausau (the same claim for which it had already targeted Continental). The majority concludes that that settlement between SSI and Wausau rendered Wausau immune from Continental's *ongoing* contribution action, essentially plucking Wausau out of that case through a settlement with a nonparty. Because I disagree that the legislature intended that a defendant in an ongoing contribution action could evade its obligations in that suit by settling with the insured, I respectfully dissent.

The OECAA governs the allocation of costs between insurance providers liable for environmental cleanup claims. The statute contains an "all-sums provision," allowing an insured with multiple insurers to select any of those insurers whose policy requires it to "pay all sums arising out of a risk covered by the policy." ORS 465.480(3)(a). That targeted insurer "must pay all defense or indemnity costs, or both." *Id*. That obligation is unaffected by the presence of other insurers; the targeted insurer must pay those costs "independent and unaffected by other insurance that may provide coverage for the same claim." *Id*. That provision thus "transfer[s] the risk of an intransigent insurer from the insured to its other insurers, where it is more easily and more fairly borne." *Allianz Global Risks v. ACE Property & Casualty Ins. Co.*, 367 Or 711, 745, 483 P3d 1124, *adh'd to as modified on recons*, 368 Or 229, 489 P3d 115 (2021) (internal quotation marks omitted). The "potential sweep" of that transfer of risk is offset by the statutory right of contribution for the targeted insurer, ORS 465.480(4)(a), which provides that a targeted insurer may seek contribution from any other potentially liable insurer "that has not entered into a good-faith settlement agreement with the insured." *Id*.

The majority concludes that that subsection—designed to mitigate the risk faced by a targeted insurer such as Continental—shields Wausau from liability to Continental for contribution because Wausau entered into a settlement with SSI long after the defense costs had been accrued and borne by Continental. Although the statute is far from a model of clarity, the more logical and equitable construction of ORS 465.480(4)(a) is that an insurer may seek contributions from another insurer who has not, *at the time contribution is sought*, entered into a settlement agreement with the insured.[1]

"In interpreting a statute, the court's task is to discern the intent of the legislature." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). "To do so, we consider the statutory text and context, along with any relevant and helpful legislative history." *Clark v. Eddie Bauer LLC*, 371 Or 177, 185, 532 P3d 880 (2023). At the outset, it is worth noting that the statute's wording is subject to multiple constructions and the parties did not present fulsome statutory construction arguments, but, absent clarification from the legislature or the Oregon Supreme Court, I offer an interpretation using our conventional statutory construction framework.

Here, the statutory text provides:

"An insurer that has paid all or part of an environmental claim *may seek* contribution from any other insurer that is liable or potentially liable to the insured and *that has not* entered into a good-faith settlement agreement with the insured regarding the environmental claim."

---

[1] The majority does not address this argument because "Continental *** makes no argument [that the bar against seeking contribution from Wausau] is subject to a temporal restriction[.]" 331 Or App at 51. Although the briefing focused on other arguments, Continental did contend at oral argument that "[t]he statute's verb tenses certainly do suggest that, if the targeted insurer seeks contribution before a co-insurer settles with the insured, that settlement is not eligible *** to bar the contribution claim." Moreover, the interpretation of the statute is at the heart of this appeal, and an appellate court has "an independent duty to correctly interpret any statute that comes before [it], regardless of the arguments and interpretations offered by the parties." *Strasser v. State of Oregon*, 368 Or 238, 260, 489 P3d 1025 (2021); *see also Hunters Ridge Condominium Ass'n v. Sherwood Crossing, LLC*, 285 Or App 416, 441 n 12, 395 P3d 892 (2017) ("We note that neither party offers arguments bearing upon the construction of the statute ***. Regardless, we have an independent duty to correctly construe the statute.").

ORS 465.480(4)(a) (emphases added). The common-sense reading of that text is that an insurer may not *seek* (present tense) contribution from another insurer that has already *entered* (past tense) into a settlement agreement. The most relevant definitions of "seek" include "to inquire for," "to ask for," and "to try to acquire or gain." *Webster's Third New Int'l Dictionary* 2055 (unabridged ed 2002). Those definitions contemplate a point in time at which a subject "asks for" or attempts to "acquire or gain." Here, as permitted by the plain text of the statute, Continental did "ask for" contribution from Wausau in 2016—long before Wausau "entered into a good-faith settlement agreement" with SSI. When a statute contains different verb tenses, "'[w]e do not lightly disregard the legislature's choice of verb tense, because we assume that the legislature's choice is purposeful.'" *State v. Gonzalez-Valenzuela*, 358 Or 451, 466, 365 P3d 116 (2015) (quoting *Martin v. City of Albany*, 320 Or 175, 181, 880 P2d 926 (1994)). At the time that Continental did "seek" contribution from Wausau, Wausau had not "entered into a good-faith settlement agreement" with SSI; therefore, Continental should not be barred from seeking contributions from Wausau for costs accrued before the settlement. *See SAIF v. Ward*, 369 Or 384, 394, 506 P3d 386 (2022) ("[T]here is no more persuasive evidence of the intent of the legislature than the words by which the legislature undertook to give expression to its wishes." (Internal quotation marks omitted.)).

The legislative history supports that plain reading of the text. The OECAA was enacted in 1999 to "promot[e] the fair and efficient resolution of environmental claims while encouraging voluntary compliance and regulatory cooperation." ORS 465.478. The relevant language was added in 2013 "to facilitate speedy cleanup of hazardous waste sites by encouraging good-faith settlements and precluding lengthy contributions claims for non-settling insurers." *Certain Underwriters v. Mass. Bonding and Ins. Co.*, 287 Or App 279, 291, 401 P3d 1212 (2017). The 2013 amendment containing the relevant language in ORS 465.480(4) was enacted "to specifically address" the situation in which "insurance companies denied coverage and thereby slowed down the clean up process" by transferring the risk of that

intransigence to the nonsettling insurer. *Id*. (internal quotation marks omitted); *Allianz Global Risks*, 367 Or at 743.

In a letter of support for Senate Bill (SB) 814 (2013), which amended the OECAA to add the good-faith settlement provision to ORS 465.480(4), Joan Snyder—attorney for insured SSI—explained, "In order to encourage settlement of environmental claims, it is important to clarify that an insurer that settles an environmental claim in good faith with its policy holder cannot *later* be the target of a suit by a different insurer seeking to make the settling insurer pay even more." Testimony, House Committee on Consumer Protection and Government Efficiency, SB 814, May 9, 2013 (statement of Joan Snyder), https://olis.oregonlegislature. gov (accessed Dec 6, 2023) (emphasis added). Moreover, Executive Director of the Columbia Corridor Corky Collier stated that the bill would contribute to cleaning up the harbor by "promoting settlements by affording insurers who desire to enter into *early* good faith settlements some protection against contribution claims by other non-settling insurers." Testimony, House Committee on Consumer Protection and Government Efficiency, SB 814, May 9, 2013 (statement of Corky Collier), https://olis.oregonlegislature.gov (accessed Dec 6, 2023) (emphasis added). General Manager of Harbor Environmental Jessica Hamilton expressed a similar sentiment: "Policyholders that are subject to long-tail environmental claims should be free to negotiate settlements with one or more of their insurers without fear that such settlements will *later* be subject to baseless challenges by recalcitrant, non-settling insurers. Allowing such settlements to go forward, without undue risk of *later* litigation, helps to promote the timely restoration of the Portland Harbor and other contamination sites." Testimony, House Committee on Consumer Protection and Government Efficiency, SB 814, May 9, 2013 (statement of Jessica Hamilton), https://olis.oregonlegislature.gov (accessed Dec 6, 2023) (emphases added). The bill's supporters interpreted the good-faith settlement provision to buttress the statute's goal of expediting cleanup by promoting early settlements. Indeed, as the testimony quoted above reflects, they believed that the good-faith settlement must occur *before* an insurer seeks contribution from the settling insurer.

That interpretation is consistent with the common-law right of contribution upon which the OECAA is based. In addressing a similar dispute between insurers of a Portland Superfund site, the Supreme Court recognized that the right to contribution "is grounded in principles of equity and is a right that *inures to the benefit of the insurer—not the insured.*" *Allianz Global Risks*, 367 Or at 739 (emphasis in original) (internal quotation marks omitted). In that case, the targeted insurer sought contribution from other potentially liable insurers who argued that, despite their policy agreements, they had no duty to defend or cover the cost of cleanup because of "side agreements" they made with the insured's parent company. The court rejected that argument, concluding that the four corners of the insurance policy—not the side agreements—governed the insurer's coverage. In reaching that conclusion, the court rejected the notion that an insured can negotiate around the liability in an insurance policy with its insurers because "the right is not the insured's to disclaim. It is a right of other insurers, who are not parties to the insurance policy, and it is a right founded *** on notions of equity and unjust enrichment." *Id*. at 742 (internal quotation marks omitted). Although the court did not address the good-faith settlement provision at issue in this case, the OECAA intended to codify, not supplant, common law contribution principles. *See id*. at 744 ("The OECAA is *** consistent with our longstanding recognition of common-law inter-insurer contribution claims[.]").[2]

Against that backdrop, it is difficult to imagine that the legislature intended ORS 465.480(4)(a) to facilitate depriving a targeted insurer such as Continental the right to contribution on these facts—where it has already been adjudicated to be liable for 100 percent of defense costs,

---

[2] The settlement with Wausau appears to offer no offset to the costs already incurred and shouldered by Continental, meaning that the settlement with Wausau has no impact on the statutory responsibility of other insurers to pay the total cost of SSI's defense and cleanup. The majority's approach of allowing that settlement to exist alongside—and not reduce—the total liability owed by Continental is potentially inconsistent with the overall approach to contribution envisioned by the OECAA. *See* ORS 465.325(6)(b) (providing that, in the context of a settlement of an environmental claim with the Department of Environmental Quality, any such settlement "reduces the potential liability of the other [potentially responsible parties] by the amount of the settlement").

shouldered tens of millions of dollars in such costs, and poured substantial additional resources into years-long contribution lawsuits (a right of contribution expressly created by the OECAA), only to have a nontargeted insurer settle with the insured in the midst of that contribution litigation. As explained, the intent behind the OECAA is to provide insureds with a timely way to access money to begin the cleanup process of hazardous sites by encouraging early settlement of claims. But the approach taken by the majority does the opposite—it encourages nonsettling insurers to take a "wait and see" approach, only settling after costs have been accrued and a contribution claim has been asserted against them. Moreover, under the majority's approach, a targeted insurer is left in a state of perpetual uncertainty—a settlement between another responsible insurer and the insured may come at any point—thus further undermining efforts to facilitate "speedy clean up of hazardous waste sites[.]" *Certain Underwriters*, 287 Or App at 291. Simply put, it is neither fair nor efficient to permit an insurer to avoid liability for contribution to a targeted insurer by entering into a settlement agreement with the insured years after the targeted insurer sought contribution.

Because I read ORS 465.480(4)(a) to permit insurers to seek contributions from other potentially responsible insurers who have not, at the time contribution is sought, settled with an insured, I respectfully dissent.